STANISLAWA KONAZEWSKA, PROSECUTRIX, v. ERIE RAIL-
ROAD COMPANY, RESPONDENT.

Argued January 16, 1945—Decided February 5, 1945.

Before Justices CASE, BODINE and DONGES.

For the prosecutrix, *Sallie Donarovich Dixon, Louis Steisel*
and *Elsie L. White.*

For the respondent, *Collins & Corbin (Edward A. Markley*
and *Patrick F. McDevitt).*

The opinion of the court was delivered by

BODINE, J. This a workmen's compensation case.

Walter Konazewska was employed by the Erie Railroad
as a car inspector. In the course of his employment, he suf-
fered an injury to his head. In less than two months there-
after he committed suicide. The question in the case is
whether the death was intentionally self-inflicted. *R. S.*
34:15–7. The Bureau found in favor of the widow and the
finding was affirmed in the Court of Common Pleas.

The testimony of the deceased's wife portrays him as a
cheerful, happy man fond of work. After the accident he
became morose and depressed. She was corroborated by
others.

The medical testimony was to the effect that the deceased
was a healthy man before the accident. Thereafter, he com-
plained of ringing sounds in his ears and terrific pains in his
head. He lost sleep and could not rest because of the pain
and was suffering from a derangement of the mind.

One of the experts in mental diseases testified, as to his opinion of the man's mental condition shortly before the suicide, as follows: "It is my opinion that this man was in a quiescent stage of a manic depressive psychosis and that the accident, or the incidents described in the hypothetical question, produced severe injury to his brain clinically, probably associated with the fracture of the skull, and that it was this injury which precipitated and activated this condition of manic depressive psychosis of which this man undoubtedly suffered previously. * * * Q. Doctor, in your opinion, was the accident of August 4th, 1939, a sufficient and competent producing cause and related to the suicide of October 26th, 1939? * * * A. With reasonable probability it is. * * * Q. And that brain damage was the ultimate cause, as you say, of his hanging himself? A. No, I didn't say that at all. Q. You didn't? A. No, I did not. Q. The brain damage, you say, doctor, was caused by the trauma? A. Yes, I would say that definitely."

Again on cross-examination, he testified: "Q. Let me ask you this, doctor: If this man selected himself a piece of wire, do you think he knew what he was doing? A. I imagine he did. Q. Very well. When this man picked himself an empty cellar in order to consummate an act of hanging, do you believe he knew what he was doing? A. I think he knew what he wanted to do. Q. You think he knew what he wanted to do? A. Yes, these patients sometimes contemplate what they want to do for months before they come to the point of doing it. Q. Doctor, when this man put a wire over a beam and fixed that wire in such a manner so that he did succeed in hanging himself, do you think then he knew what he was doing? A. I think he knew then that he was going to commit suicide. * * * Q. He knew the nature of the act, didn't he? A. I imagine he did, yes. Q. There is no doubt about that, when he went about five blocks from his own home and picked an empty cellar. A. I don't think there is very much doubt that he knew what he wanted to do. Q. He knew what he wanted to do? A. Yes. Q. And he made the proper plans for it? A. Yes. * * * Q. Regardless of your opinion, as a medical man, you must concede that the man's mental faculties were

such that he knew the nature of his act. *A*. I admit that without a second's hesitation. *Q*. In other words, the man knew what he was going to do and premeditated upon the act? *A*. I would agree with you that he did."

Another expert called by the petitioner on cross-examination testified as follows: "*Q*. He knew he was going to take his life? *A*. Correct. *Q*. No doubt about that in your mind? *A*. That I feel convinced. *Q*. In other words, this man was not acting under any irresistible impulse, was he? *A*. I don't believe there was any irresistible impulse present in this case. I don't believe that was present."

We find the fact to be that by the weight of the evidence the death was shown to have been intentionally self-inflicted. Hence, there should have been no recovery. The intentional act of the deceased broke the causal connection, even though his brain was injured by the blow suffered in the course of his employment.

The judgment under review will be reversed, but without costs.