JAN SHERMAN KAHLE, PETITIONER-APPELLANT, v.
PLOCHMAN, INC., RESPONDENT-RESPONDENT.

Argued December 1, 1980—Decided April 27, 1981.

*Gerald M. Eisenstat* argued the cause for appellant (*Shapiro, Eisenstat, Capizola, O'Neill & Gabage*, attorneys).

*David A. Sacks* argued the cause for respondent (*Horn, Kaplan, Goldberg & Gorny*, attorneys; *Glenn E. Gronlund*, on the brief).

The opinion of the Court was delivered by

CLIFFORD, J.

The Workers' Compensation Act precludes an award of compensation "when the injury or death is intentionally self-inflicted." *N.J.S.A.* 34:15–7. Petitioner's decedent was injured in an accident arising out of and in the course of her employment. Ten years later she committed suicide. The judge of compensation dismissed petitioner's dependency claim petition on the ground that the employee's death was "intentionally self-inflicted" within the meaning of the statutory preclusion. We ordered direct certification of petitioner's appeal pending unheard in the Appellate Division, 84 *N.J.* 417 (1980); *R.* 2:12–1, and now reverse.

I

On February 11, 1966 Rosalie Kahle (employee) was seriously injured in the course of her employment when a skid fell on her back at respondent's mustard-packing plant in Vineland, New Jersey. Employee was twenty-six years old, was married, had one child, and was three months pregnant with her second child at the time of the accident. She sustained injuries to her back and left leg which over the course of the next several years required hospitalization surgical removal of a lumbar disc and spinal fusion, and the prescription of medication for pain and depression. In 1971 a judge of compensation awarded 66⅔% permanent partial disability for the orthopedic, neurological and psychiatric consequences of her work-connected accident.

The years of Mrs. Kahle's life following the compensation award continued to be dominated by unremitting pain and increasing disability. She never returned to work. Her medications included anti-depressants, pain relievers and sleeping

pills. She was diagnosed as suffering at various times from a convulsive disorder caused by drug withdrawal, severe compressive lumbar and dorsal arachnoiditis (inflammation of the membrane of the spinal cord), a neurogenic bladder, anemia, iron deficiency and chronic cystitis. Mrs. Kahle was rehospitalized in 1972 for spinal injections and again in 1973 for the surgical implant of a dorsal column stimulator (a battery operated electrode positioned below the collarbone and intended to eliminate pain electronically), a measure later conceded to have been unsuccessful. There were further hospitalizations in 1974 and on three occasions in 1975. Dorsal nerve blocks were performed and Mrs. Kahle was reduced to using crutches. In late 1975, trying to negotiate some cellar stairs she fell and injured her head, neck and back, resulting in additional hospital confinement. Thereafter the treating physician prescribed foot drop braces for both feet. A month before her death Mrs. Kahle received a nerve block for chest pain and two weeks later a renewal of a narcotic prescription.[1]

During the night preceding her death petitioner's decedent complained of pain and slept fitfully. Sometime after four o'clock in the morning of May 2, 1976 she wrote two poignant notes, one to her husband and the other to her treating physician of ten years. Shortly thereafter she ended her life with a single rifle shot to her head. The notes make it abundantly clear that Mrs. Kahle was no longer able to bear her pain, anxiety and depression.

## II

Petitioner, widower of the deceased employee and father of their two young sons, filed a claim for death benefits for himself

[1]The employee's last compensation payment was received from respondent on October 25, 1975. On March 5, 1976, Mrs. Kahle filed a First Application for Review or Modification claiming an increase in disability. On June 18, 1976, six weeks after the employee's death, respondent filed an Answer admitting that the disability had increased since the date of the original award to the point that the employee had become totally disabled prior to her death.

and on behalf of the children. The dependency claim petition alleged that Mrs. Kahle's suicide was the result of the severe pain, anxiety and depression caused by the work-connected injuries sustained in the accident at respondent's plant. Respondent denied the compensability of the suicide.

At the ensuing hearing petitioner produced Dr. Theodore Kushner, a neuropsychiatrist who had examined the decedent on two occasions, the second being in January 1976, approximately three months prior to her death. Dr. Kushner testified that at the-last examination he found Mrs. Kahle to be depressed and anxious. He diagnosed her psychiatric condition as post-traumatic anxiety depressive reaction, which he assessed at a 40% psychiatric disability rating. He described her psychiatric condition at that time as "chronically anxious and moderately depressed" but "free of psychosis." Dr. Kushner proffered his medical opinion that when he examined the employee in January 1976, "she was totally disabled with no possibility of recovery or rehabilitation." In response to a detailed hypothetical question put forth by counsel for petitioner, the neuropsychiatrist concluded that Mrs. Kahle's suicide was a direct consequence of the work-connected injury she sustained on February 11, 1966, after ten years of unusual suffering, increasing disability, chronic unremitting pain, depression, drug dependency, "and finally the knowledge that she would never recover." Respondent introduced no evidence at the hearing and produced no witnesses of its own, being content to rely on the legal argument that by virtue of *N.J.S.A.* 34:15–7 suicide is not a compensable death under New Jersey law of workers' compensation.

In ruling that Mrs. Kahle's suicide was "intentionally self-inflicted" within the meaning of *N.J.S.A.* 34:15–7 and therefore not a compensable death, the compensation judge relied upon the standard announced in the case of *In re Sponatski*, 220 *Mass.* 526, 108 *N.E.* 466 (Mass.1915), adopted *sub silentio* in *Konazewska v. Erie R.R. Co.*, 132 *N.J.L.* 424 (Sup.Ct.1945), aff'd, 133 *N.J.L.* 557 (E. & A.1946). Under the *Sponatski* rule, a suicide following a work-connected injury is compensable only "where

there follows as the direct result of a physical injury an insanity of such violence as to cause the victim to take his own life through an uncontrollable impulse or in a delirium of frenzy 'without conscious volition to produce death, [without] having knowledge of the physical consequences of the act' * * *." 220 *Mass.* at 530, 108 *N.E.* at 468 (quoting *Daniels v. New York, New Haven & Hartford R.R.,* 183 *Mass.* 393, 67 *N.E.* 424 (Mass.1903). Or, as the judge of compensation put it, an employee's suicide is not compensable unless the worker (1) as the direct result of a physical injury, (2) was possessed of an uncontrollable impulse to commit suicide or was in a delirium of frenzy, (3) did not consciously intend to kill himself, and (4) did not realize the consequences of his act of self-destruction. Because the petitioner's proofs fell short of satisfying the *Sponatski* test, judgment was entered in favor of the employer.

In applying the *Sponatski* formula to the plight of the employee in the instant case, the judge recognized that Mrs. Kahle unquestionably suffered intense pain from the date of her work-connected injury through the time of her death, and that the mental consequences of this prolonged suffering required two hospitalizations for psychiatric examination. Of greater importance to the judge, however, were the negating facts that employee did not require active psychiatric care, had no diagnosed psychosis, and was 60% functional psychiatrically. He also determined that the employee's conduct immediately prior to her death, particularly the writing of farewell notes to her husband and her physician, evidenced conscious volition to produce death and knowledge of the consequences of her act—factors militating against recovery under the *Sponatski* rule.

The compensation judge was guided by the general statement from Professor Larson's treatise that under *Sponatski*, "[t]he compensable cases are frequently marked by some violent or eccentric method of self-destruction while the noncompensable cases usually present a story of quiet but ultimately unbearable agony leading to a solitary and undramatic suicide." See 1A Larson, *Workmen's Compensation Law* § 36.21 (1978). It is

apparent that under *Sponatski* the suicide of the employee in the present case falls within the latter category of tragic but noncompensable cases.

## III

Petitioner's appeal does not challenge the compensation judge's findings of fact. Nor does it disagree that the *Sponatski* formula is currently recognized as controlling law in New Jersey as to the circumstances under which an employee suicide is an "intentionally self-inflicted" death for the purposes of the statutory exclusion in *N.J.S.A.* 34:15–7. See *Konazewska, supra*; *Kazazian v. Segan*, 14 *N.J.Misc.* 78 (N.J. Dept. Labor 1936). Rather, petitioner's brief urges us to overrule "this antiquated [*Sponatski*] doctrine to bring New Jersey in line not only with the modern view in other states, but also with the spirit of our court's prior interpretations of our compensation law."

At the time the *Konazewska* decision was affirmed by the Court of Errors and Appeals in 1946, the *Sponatski* test was the standard followed by the majority of states in suicide-compensation cases. This standard, however, has been gradually displaced as the majority rule by the "chain-of-causation" test, under which death benefits may be awarded to dependents of employees whose suicides are shown to be causally related to a disturbance of mind arising from the pain, despair and psychiatric consequences of work-connected injuries. See 1A *Larson, supra*, at § 36.10. The leading case espousing the chain-of-causation rule is *Whitehead v. Keene Roofing Co.*, 43 *So.2d* 464 (Fla.1949), in which the Supreme Court of Florida reviewed a widow's claim for death benefits under a statutory provision that precluded compensation for injuries "occasioned primarily * * * by the wilful intention of the employee to injure or kill himself." 43 *So.2d* at 465 (quoting *Fla.Stat.Ann.* § 4440.09(3) (West 1941)). Concluding that the suicide of the deceased employee was directly attributable to the mental disturbance that arose out of physical injuries he sustained in a fall from a

roof on which he was working, the *Whitehead* court posed what has since become the classic statement of the rule:

> We believe that in those cases where the injuries suffered by the deceased result in his becoming devoid of normal judgment and dominated by a disturbance of mind directly caused by his injury and its consequences, his suicide cannot be considered "wilful" within the meaning and intent of the Act. [43 So.2d at 465.][2]

The issue of the compensability of an employee suicide under the *Whitehead* standard turns not on the employee's conscious volition or knowledge of the consequences of his act, but rather on the existence of an unbroken chain of causation from the work-connected injury to the suicide. See 1A Larson, *supra*, at § 36.30.

The majority of American jurisdictions whose workers' compensation statutes contain an exclusion for wilfully, purposefully or intentionally self-inflicted injury or death have adopted the chain-of-causation test as the proper standard for interpreting the operative term "wilful," "purposeful" or "intentional." See, *e. g., Graver Tank & Manufacturing Co. v. Industrial Commission,* 97 *Ariz.* 256, 399 *P.2d* 664, 668 (Ariz.1965); *Reynolds Metals Co. v. Industrial Commission,* 119 *Ariz.App.* 566, 582 *P.2d* 656 (Ariz.Ct.App.1978); *Delaware Tire Center v. Fox,* 401 *A.2d* 97, 100 (Del.Super.Ct.1979), aff'd, 411 *A.2d* 606, 607 (Del.1980); *Jones v. Leon County Health Department,* 335 *So.2d* 269, 271 (Fla.1976); *Whitehead v. Keene Roofing Co., supra; Harper v. Industrial Commission,* 24 *Ill.2d* 103, 180 *N.E.2d* 480 (Ill.1962);

---

[2]The *Whitehead* test has been applied to workers' compensation statutes that, like *N.J.S.A.* 34:15–7, employ the term "intentionally self-inflicted" to describe noncompensable industrial injury or death. See, *e. g., Redmond v. Workmen's Compensation Appeals Board,* 36 *Cal.App.*3d 302, 111 *Cal.Rptr.* 530 (Ct.App.1973); *Burnight v. Industrial Accident Commission,* 181 *Cal.App.* 2d 816, 5 *Cal.Rptr.* 786, 791 (Dist.Ct.App.1960) (interpreting *Cal.Lab.Code* § 3600 (West 1971)); *McDonald v. Atlantic Steel Co.,* 133 *Ga.App.* 157, 210 *S.E.2d* 344, 345 (Ga.App.1974) (interpreting *Ga.Code* § 114.105 (1975 & Supp.1976)); *Brenne v. Department of Industry, Labor & Human Relations,* 38 *Wis.2d* 84, 156 *N.W.2d* 497 (Wis.1968) (interpreting *Wis.Stat.* § 102.-03(1)(d) (1979)). See generally Larson, *The Suicide Defense in Workmen's Compensation,* 23 *Buffalo L.Rev.* 43 (1973).

*Thompson v. Lenoir Transfer Co.,* 48 *N.C.App.* 47, 268 *S.E.2d* 534, 536–37 (N.C.Ct.App.1980); *Petty v. Associated Transport, Inc.,* 276 *N.C.* 417, 173 *S.E.2d* 321, 328 (N.C.1970); *Saunders v. Texas Employers' Insurance Association,* 526 *S.W.2d* 515 (Tex. 1975); *Brenne v. Department of Industry, Labor & Human Relations,* 38 *Wis.2d* 84, 156 *N.W.2d* 497 (Wis.1968). Under this test an employee's death by suicide is compensable if it is shown to be the result of the disturbance of mind caused by a work-connected injury and its consequences, such as severe pain, depression and despair, and is of such severity as to override normal rational judgment. See *e. g., Delaware Tire, supra,* 411 *A.2d* at 607; *Graver Tank, supra,* 399 *P.2d* at 668. An act of suicide committed under circumstances in which the decedent was devoid of normal judgment is not considered to be wilfully, purposefully or intentionally self-inflicted within the meaning of the various statutory exclusions, regardless of whether the act was committed with conscious volition or knowledge of its consequences.

We hold that the chain-of-causation test is a more realistic and reasonable standard than the *Sponatski* rule. It is to be incorporated henceforth in the New Jersey law of workers' compensation. Under the rule we adopt today an employee's death by suicide is compensable where the original work-connected injuries result in the employee's becoming dominated by a disturbance of mind directly caused by his or her injury and its consequences, such as extreme pain and despair, of such severity as to override normal rational judgment. A suicide committed by an employee suffering from such disturbance of mind is not to be considered "intentional" within the meaning and intent of *N.J.S.A.* 34:15–7, even though the act itself may be volitional. See *Delaware Tire, supra,* 401 *A.2d* at 100. The *Sponatski* rule's emphasis on the employee's conscious volition and knowledge of the physical consequences of his or her act virtually ignores the role that severe pain, anxiety, despair and prescribed psychotropic drugs may play in breaking down a rational mental process. See *Delaware Tire, supra,* 411 *A.2d* at 607; *Graver*

*Tank, supra,* 399 *P.*2d at 667–68; *Harper, supra,* 180 *N.E.* at 483. The *Sponatski* analysis also fails to recognize that the disturbance of mind that destroys the employee's will to survive may itself be a product of the work-connected injury.

Today's decision not only falls in line with the trend of enlightened judicial determinations in other jurisdictions, but also is in accordance with the often expressed intent and purpose of New Jersey Worker's Compensation Act. It has long been axiomatic to this Court that the Act is remedial social legislation and should be given liberal construction in order that its beneficent purposes may be accomplished. *Panzino v. Continental Can Co.,* 71 *N.J.* 298, 303 (1976); *Torres v. Trenton Times Newspaper,* 64 *N.J.* 458, 461 (1974); *Petrozzino v. Monroe Calculating Machine Co., Inc.,* 47 *N.J.* 577, 580 (1966). It is for this reason that in construing the statutory exclusion of benefits for "intentionally self-inflicted" injury or death, *N.J.S.A.* 34:15–7, this Court is not bound by its coldly literal import. *Paul v. Baltimore Upholstering Co.,* 66 *N.J.* 111, 136 (1974). Rather, by holding compensable those suicide cases in which work-connected injury causes such disturbance of mind as to impair the employee's capacity for normal reason and rational judgment, we honor the legislative purpose of relieving society as a whole of the burden of supporting dependents of those whose death is caused by work-connected injuries. See *Petrozzino, supra,* 47 *N.J.* at 580.

IV

In the trial of this case the parties relied upon and were confined by the existing state of the law. Because we now overrule *Konazewska, supra,* and reject the *Sponatski* rule, we remand to the Division of Workers' Compensation for the creation of a supplemental record and a determination of whether this case falls within the rule declared today. Whereas Dr. Kushner's testimony leaves no doubt whatsoever that in his opinion there was a direct and unbroken chain of causation

between the decedent's compensable accident and her eventual suicide, nevertheless he was not asked—and hence had no occasion to testify—whether the accidental injury and its residuals so disturbed Mrs. Kahle's mind as to deprive her of normal reason and impair her capacity to exercise rational judgment. Should that necessary link in the chain be provided at the hearing on remand, respondent must likewise have the opportunity to introduce evidence countering petitioner's contention that the decedent's suicide was a direct consequence of the work-connected injury within the rule as announced today.[3]

At the risk of repetition, which we hazard out of a concern that there be no mistaking the import of our decision, in the remanded proceedings the burden will be on petitioner to establish by competent medical expert testimony that the employee's suicide was the result of her becoming devoid of normal judgment and dominated by a disturbance of mind directly caused by her work-connected injury and its consequences. Petitioner must prove by a preponderance of the expert medical evidence that there was an unbroken chain of causation between the compensable injury, the employee's disturbance of mind, and her ultimate suicide. Respondent can attack that causal chain with any competent evidence that the decedent suffered from no such disturbance of mind, or perhaps that there were far stronger nonemployment-connected influences accounting for her suicide. In those or other similar circumstances the respondent will thereby have successfully rebutted petitioner's showing of a direct causal connection between the industrial injury and death. In that event the statutory preclusion of death benefits for "intentionally self-inflicted" death would be a complete defense for respondent.

---

[3]We are aware of the fact that the judge of compensation who heard this case has since died. We anticipate that at the remanded proceedings the judge who hears the case will rely on the record created heretofore, supplemented by whatever additional proofs the parties may produce bearing on the rule announced in this opinion.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

*For reversal and remandment*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK–7.

*For affirmance*—None.