**In the Matter of the DEATH OF George Washington STROER, Jr.**

**Anna Nell STROER, Petitioner,**

v.

**GEORGIA PACIFIC CORPORATION, an Own Risk Insurer, and Workers' Compensation Court, Respondents.**

No. 58793.

Supreme Court of Oklahoma.

Oct. 4, 1983.

Rehearing Denied Dec. 20, 1983.

Bay, Hamilton, Lees, Spears & Verity by Arthur S. Bay, Oklahoma City, for petitioner.

William G. Cunningham, Del City, for respondents.

HODGES, Justice.

The novel question presented is whether 85 O.S. 1981 § 11[1] precludes death benefits to the surviving spouse and dependents of an injured worker who commits suicide after incurring a work-related injury.

The decedent, George Washington Stroer, Jr., was 6'7" tall and weighed 300–315 lbs. He had been employed in the lumber business for thirty-one years in jobs which required a great deal of physical strength. Although he had an eighth grade education, the decedent experienced difficulty with reading and writing. On February 15, 1980, during the course of his employment with Georgia Pacific Corporation, Stroer injured his right shoulder. An order, awarding 300 weeks for temporary total benefits, was entered August 8, 1980, by the Workers' Compensation Court, and on July 28, 1981, a Form 9 was filed pertaining to permanent, partial impairment benefits and payment of medical expenses. Despite surgery and extensive physical therapy, Stroer was never able to regain the full use of his shoulder. Before his injury he could lift 100–200 lbs.; shortly before his death, he could not remove a radiator cap. He continued to suffer pain, could not perform his assigned duties; and became severely depressed. On August 30, 1981, Stroer shot himself. The widow and child were awarded death benefits which were vacated by the en banc order of the Workers' Compensation Court. The Court of Appeals affirmed the order. The widow and child seek certiorari.

The testimony of his widow, his daughter, his best friend, and his attending physician was that: prior to the accident Stroer was a well adjusted, happy, social person who liked to tease; after the accident, he became unhappy, depressed, antisocial and unstable; his depression was caused by his inability to continue to work, earn a living and be physically active. He was particularly concerned because his lack of education impeded his ability to perform work which required other than manual labor.

The testimony of the employer's expert witness who had never seen the patient, and formed his opinion based on medical records was that it was possible that Stroer's depression was caused by several deaths in the family and the discovery that his daughter had cancer. [Some of the deaths occurred before his injury, and, although his grandmother died ten days before his death, the death was anticipated and did not seem to unduly upset him. The daughter's cancer was subsequently diag-

---

1. It is provided by 85 O.S.1981 § 11 for the work related death of an employee:
   ... "except where the injury is occasioned by the willful intention of the injured employee to bring about injury to himself or of another,"
   ...

nosed before his death as a minor problem.] He also testified that the decedent's severe depression was partially caused by his physical condition and feeling of inadequacy because he was not able to work.

I

■ Although 85 O.S.1981 § 11 provides that benefits are not allowable for an employee's intentionally self-inflicted injury, suicide does not automatically preclude compensation. Several rules have been formulated to determine whether suicide is compensable under the Act.[2] The majority of jurisdictions whose workers' compensation statutes contain an exclusion for wilful or intentional injury have adopted the chain of causation test as the criterion for interpreting the term "wilful", "purposeful" or "intentional". This standard best reflects the socio-economic purpose of the Workers' Compensation Act.

■ Under this rule, an employee's death by suicide is compensable if the original work-related injuries result in the employee's becoming dominated by a disturbance of mind directly caused by his/her injury and its consequences, such as extreme pain and despair, of such severity to override normal or rational judgment. The act of suicide is not an intervening cause of death and the chain of causation is not broken in cases where the incontrovertible evidence reflects that, but for the injury, there would have been no suicide.[3] A suicide committed under these circumstances cannot be held to be intentional even though the act itself may be volitional.[4] The chain of causation rule places the burden on the claimant to prove by a preponderance of the evidence that there was an unbroken chain of causation between the compensable injury, the disturbance of mind, and the ultimate suicide.[5] The direct causal connection between the work-related injury and the suicide must not be overpowered and nullified by influences originating solely outside the employment.

■ Although compensation will be denied if the suicide was caused primarily by non-work connected problems, the work-connected injury does not have to be the sole cause of the suicide.[6] Expert testimony is not absolutely indispensable. If the facts and circumstances are sufficiently persuasive, they may carry the burden of establishing the requisite causal nexus.[7]

---

2. See "Suicide As Compensable Under Workmen's Compensation Act," 15 A.L.R.3d 616 (1965) for a discussion of the various approaches to the problem.

3. *McDonald v. Atlantic Steel Co.*, 133 Ga.App. 157, 210 S.E.2d 344, 345 (1974); *Petty v. Associated Transport, Inc.*, 276 N.C. 417, 173 S.E.2d 321, 329 (1970); *Whitehead v. Keene Roofing Co.*, 43 So.2d 464–65 (Fla.1949).

4. *Kahle v. Plochman*, 85 N.J. 539, 428 A.2d 913, 916 (1981). In *Delaware Tire Center v. Fox*, 401 A.2d 97, 99–100 (Del.1979), the Court affirmed an award which had been entered by the Industrial Accident Board after decedent committed suicide. The Court found that the initial injury was the cause of the suicide because it initiated an intense depression due to the pain the decedent was suffering and his inability to work. Benefits were also awarded in *Jones v. Leon County Health Dept.*, 335 So.2d 269, 272 (Fla.1976) where the decedent suffered from incurable tuberculosis which he contacted in the course of his employment.

5. *Kahle v. Plochman*, 428 A.2d p. 918, id.

6. *Voris v. Texas Employers' Ins. Assoc.*, 190 F.2d 929 (5th Cir.1951) *cert. den'd* 342 U.S. 932, 72 S.Ct. 376, 96 L.Ed. 694 (1952).

7. *McIntosh v. E.F. Hauserman Co.*, 12 A.D.2d 406, 211 N.Y.S.2d 482 *aff'd.* 10 N.Y.2d 892, 223 N.Y.S.2d 513, 179 N.E.2d 514 (1961). See 2A Larson's Workers' Compensation Suicide Or Intentional Self Injury, p. 6–117, 6–138 § 36.30 (1982). See also 12 O.S.1981 § 2701. It provides:

"If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
1) Rationally based on the perception of the witness; and
2) Helpful to a clear understanding of his testimony or the determination of a fact in issue."

Oklahoma case law has always permitted lay testimony regarding mental capacity. See *Brown v. Chaddick*, 197 Okl. 515, 172 P.2d 996 (1946); *Farmers & Merchants' Bank of Mountain View v. Haile*, 46 Okl. 636, 149 P. 214 (1915); *Conwill v. Eldridge*, 35 Okl. 537, 130 P. 912 (1913).

The employer can attack the causal chain with any competent evidence that the employee suffered no disturbance of mind, or that there were far stronger non-employment influences which accounted for the suicide. A successful rebuttal reveals a break in the chain of causation, and results in a complete defense under the statutory preclusion of death benefits for intentional self-inflicted injuries or death.[8]

■ We find that the order of the Workers' Compensation Court en banc, vacating the trial court's award of death benefits, is not supported by any competent evidence.[9] The evidence reflects that: prior to his shoulder injury, the employee had never suffered depression and anxiety; the urge to commit suicide appeared only after his disabling injury; and that the suicide would not have occurred in the absence of the injury.[10]

CERTIORARI GRANTED.

ORDER OF THE WORKERS' COMPENSATION TRIAL COURT AFFIRMED; ORDER OF THE WORKERS' COMPENSATION COURT EN BANC REVERSED; OPINION OF THE COURT OF APPEALS VACATED.

LAVENDER, DOOLIN, HARGRAVE and WILSON, JJ., concur.

SIMMS, V.C.J., and IRWIN and OPALA, JJ., concur in part; dissent in part.

BARNES, C.J., dissents.

SIMMS, Vice Chief Justice, concurring in part, dissenting in part:

I concur in that part of the opinion which holds that suicide is compensable if it occurs as a direct and causal result of a work related injury.

I dissent, however, to the award under the facts of this case.

**8.** *Kahle v. Plochman,* 428 A.2d p. 918, supra.

**9.** *Graves v. Safeway Stores, Inc.,* 653 P.2d 1236, 1239 (Okl.1982).

I am authorized to state that IRWIN and OPALA, JJ., join with the views expressed herein.

**10.** See *Delaware Tire Center v. Fox,* note 4, supra.