COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Willis and Fitzpatrick
Argued at Alexandria, Virginia


FOOD DISTRIBUTORS AND
 CENTURY INDEMNITY COMPANY
                                        OPINION BY
v.        Record No. 1206-96-4    JUDGE JOHANNA L. FITZPATRICK
                                        MAY 13, 1997
ESTATE OF KENNETH MERRILL BALL


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Douglas Seymour (Law Offices of E. Wayne
            Powell, on brief), for appellants.

            Kermit L. Racey (Racey & Racey, on brief),
            for appellee.



     Food Distributors and its insurer (collectively referred to

as "employer") contend that the Workers' Compensation Commission

("commission") erred in finding that (1) Kenneth Merrill Ball's

(decedent) death by suicide was causally related to his

compensable September 5, 1989 injury by accident; and (2) Code

§ 65.2-306(A)(1) did not bar compensation for the decedent's

suicide.  We conclude that the suicide was causally related to

the earlier injury and that compensation was not barred.

                    I.  BACKGROUND

     On September 5, 1989, decedent suffered a compensable injury

to his left shoulder when he tripped over a phone cord in his

employer's office.  His claim was accepted by employer and he

underwent successive surgeries to his shoulder in October 1989,

February 1990, and October 1990.  Ultimately, decedent was

diagnosed with post-traumatic impingement syndrome and with a

permanent thirty-three percent "impairment of the upper extremity or twenty percent of the whole person." Despite the three operations, rehabilitation, and medication, decedent remained incapacitated, in pain, and depressed.

Following the injury, due to his chronic pain, decedent was unable to work full time or to engage in simple, repetitive tasks. He also suffered from insomnia. The pain began immediately after his injury and continued throughout the rest of his life. Decedent described his pain as an aching in his left shoulder, accompanied by the sensation of pins and needles and numbness throughout his left arm and hand. Decedent's inability to work and to provide for his family led to low self-esteem and depression. He went from being an "outgoing, vibrant person" prior to his injury to becoming "someone who was very morose, moody, and at times angry." Decedent's treating orthopedic surgeon, Dr. Thomas W. Daugherty, referred decedent to Dr. Bernard J. Lewis for psychological counseling.

Before he was seen by Dr. Lewis, decedent's depression worsened, and he attempted suicide in December 1990. He was hospitalized at the Winchester Medical Center and treated by Dr. Bob Lizer. Following his release from the hospital, decedent began individual and group counseling with Dr. Lewis, who became his treating psychologist at the Chronic Pain Program of Psychological Health Associates, Ltd. Decedent continued treatment with Dr. Lewis until his death. Decedent continually

took pain medication and antidepressants following his first suicide attempt. Five years later, decedent committed suicide by taking a drug overdose. He was fifty-six at the time of his death, and he is survived by his wife, Mrs. Ball, and two daughters.

Decedent's estate and widow (claimant) filed a claim for benefits with the commission on February 22, 1995 and requested death and other benefits pursuant to the Workers' Compensation Act. In an opinion dated April 16, 1996, the commission relied on Dr. Lewis' opinion regarding causation and the doctrine of compensable consequences to find decedent's action outside the scope of the bar of Code § 65.2-306(A)(1). The commission reviewed the history of decedent's injury, pain, depression, and treatment, as well as evidence presented by Dr. Lewis, Mrs. Ball, Dr. Daugherty, and Dr. Bruce M. Smoller. Based on this review, the commission determined that:

> From this record the Deputy Commissioner concluded that the evidence preponderates in establishing a direct and proximate causal connection between the decedent's September 5, 1989, industrial accident and his death on February 12, 1995. We agree. Dr. Lewis has been the treating psychologist since 1990. His extensive reports over the course of his treatment document overwhelmingly the fact that the most significant stressor in the claimant's life was his "intractable pain" resulting in incapacity and depression. Dr. Lewis' unequivocal opinion linking the decedent's death to his chronic pain and resulting depression is supported repeatedly by Dr. Lewis' ongoing assessments. Dr. Smoller's opinion attributing the depression and suicide to other factors has minimal support in the record.

3

> The employer argues that Code
> § 65.2-306(A)(1) bars compensation for
> suicide.  However, as the Deputy Commissioner
> noted, Mr. Ball's industrial accident in 1989
> was not self-inflicted.  His suicide was a
> consequence of the depression resulting from
> the compensable accident.  Therefore, the
> claim is not barred by this section of the
> Act.

Employer appeals the commission's award of benefits to claimant.

## II.  DOCTRINE OF COMPENSABLE CONSEQUENCES

Employer argues that the commission erred in awarding benefits to claimant because decedent's suicide was an independent and willful act that barred compensation. Code § 65.2-306(A)(1) provides in pertinent part that "[n]o compensation shall be awarded to the employee or his dependents for an injury or death caused by:  (1) The employee's <u>willful</u> misconduct or <u>intentional</u> self-inflicted injury."  (Emphasis added.)  Employer's argument presents an issue not yet addressed by this Court.

It is undisputed that decedent's initial injury in 1989 was compensable.  It is also undisputed that "[t]he doctrine of compensable consequences is well established and has been in existence for many years" in Virginia.  <u>Williams Industries, Inc. v. Wagoner</u>, 24 Va. App. 181, 186, 480 S.E.2d 788, 790 (1997). This doctrine, also known as the chain of causation rule, provides that "'where . . . the chain of causation from the original industrial injury to the condition for which compensation is sought is direct, and not interrupted by any

4

intervening cause attributable to the [employee's] own intentional conduct, then the subsequent [condition] should be compensable.'" Leadbetter, Inc. v. Penkalski, 21 Va. App. 427, 432, 464 S.E.2d 554, 556 (1995) (quoting American Smelting & Refining Co. v. Industrial Comm'n, 544 P.2d 1133, 1135 (Ariz. Ct. App. 1976)). Moreover,

> [o]nce an injury is compensable, the employer
> is liable for the full extent of the injury:
> the fact that complications arise or the
> injury worsens does not alter the compensable
> nature of the injury. "When the primary
> injury is shown to have arisen out of and in
> the course of employment, every natural
> consequence that flows from the injury
> likewise arises out of the employment, unless
> it is the result of an independent
> intervening cause attributable to claimant's
> own intentional conduct."

Imperial Trash Service v. Dotson, 18 Va. App. 600, 606-07, 445 S.E.2d 716, 720 (1994) (quoting Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 283, 348 S.E.2d 876, 879 (1986)). "In other words, where a causal connection between the initial compensable injury and the subsequent injury is established, the doctrine of compensable consequences extends the coverage of the Workers' Compensation Act to the subsequent injury because the subsequent injury 'is treated as if it occurred in the course of and arising out of the employee's employment.'" American Filtrona Co. v. Hanford, 16 Va. App. 159, 162-63, 428 S.E.2d 511, 513 (1993) (quoting Bartholomew Drywall Co. v. Hill, 12 Va. App. 790, 793-94, 407 S.E.2d 1, 3 (1991)).

Although we have long accepted the doctrine of compensable

consequences, we have yet to examine its application in the context of death by suicide. However, we are guided by the decisions of our sister states that have considered this issue. Initially, we note the West Virginia Supreme Court of Appeals' observation that "[m]ost [suicide] cases . . . present the same pattern of facts: a severe, or extremely painful, or hopelessly incurable injury, followed by a deranged mental state ranging from depression to violent lunacy, followed in turn by suicide." Hall v. State Workmen's Compensation Commissioner, 303 S.E.2d 726, 728 (W.Va. 1983). In addressing such circumstances, other states generally apply one of two rules.[1]

Under the minority rule, known as the rule in Sponatski's Case or the "voluntary wilful choice test," the requisite mental derangement is defined as:

> [A]n insanity of such violence as to cause the victim to take his own life through an uncontrollable impulse or in a delirium of frenzy "without conscious volition to produce death, having a knowledge of the physical consequences of the act."

1A Arthur Larson, Workmen's Compensation Law § 36.21, at

---

[1] Two other rules have been developed, the New York rule and the English rule. The New York rule "is generally a chain of causation test but with the possible requirement of physical damage to the brain itself." State v. Ramsey, 839 P.2d 936, 940 (Wyo. 1992). The English rule states that the "insanity must be the direct result of the injury itself or the shock produced by it, and not an indirect result caused by brooding over the injury and its consequences." Id. As these two rules are rarely, if ever, applied, we do not address them for the purposes of this opinion.

6-162 – 163 (citation omitted) (emphasis added).  Additionally,

this rule proscribes the following behavior:

> [W]here the resulting insanity is such as to
> cause suicide through a <u>voluntary wilful
> choice</u> determined by a moderately intelligent
> mental power which knows the purpose and the
> physical effect of the suicidal act, even
> though choice is dominated and ruled by a
> disorderly mind, then there is a new and
> independent agency which breaks the chain of
> causation arising from the injury.

<u>Id.</u>  This minority rule is steadily losing ground.[2]

The rule adopted by the majority of states is known as the

"chain of causation" rule which provides that suicide is

compensable if the injury produces mental derangement and the

mental derangement produces suicide.  Larson, <u>supra</u> § 36.00

at 6-160.

> This theory focuses not upon any
> particularized state of mind or mental
> disease, but upon the causal link between a
> work-related injury and ultimate death by
> suicide.  The rationale . . . of the rule is
> grounded in advances in modern psychiatry and
> a recognition that volition may be negated by
> a deterioration in mental health short of
> insanity or derangement.  Where a direct
> causal link can be established between a
> work-related injury and a disturbance of the
> mind which leads to suicide, compensation
> will not be barred.

<u>Wells v. Harrell</u>, 714 S.W.2d 498, 501 (Ky. Ct. App. 1986).

---

[2]The <u>Sponatski</u> case itself was reversed legislatively, as
Massachusetts amended its statute to provide for compensation when
"due to the injury, the employee was of such unsoundness of mind
as to make him irresponsible for his act of suicide."  Larson,
<u>supra</u> § 36.21 at 6-162 (citation omitted).

Applying this rationale, the Supreme Court of Oklahoma held that the applicable statute did not preclude payment of death benefits to the surviving spouse and dependents of an injured worker who committed suicide after incurring a work-related injury.  See Stroer v. Georgia Pacific Corporation, 672 P.2d 1158 (Okla. 1983).[3]  In Stroer, a factually similar case, decedent injured his shoulder.  Despite surgery and extensive therapy, he never regained the full use of his shoulder.  Approximately eighteen months following his injury, decedent shot himself.  His widow, daughter, best friend, and attending physician testified that after the accident, decedent became unhappy, depressed, antisocial and unstable, and that his depression was caused by his inability to continue to work, earn a living, or be physically active.  Id. at 1160.  As in the instant case, the employer in Stroer presented the testimony of an expert witness, who formed his opinion based on his review of decedent's medical records without ever having seen the decedent.  The expert opined that it was possible that decedent's depression was caused by factors other than his injury.  Id. at 1160-61.

The court disagreed.  It analyzed the statute denying benefits for an employee's intentionally self-inflicted injury, and observed that "[t]he majority of jurisdictions whose workers'

---

[3]The statute allowed compensation for the work-related death of an employee "except where the injury is occasioned by the willful intention of the injured employee to bring about injury to himself . . . ."  Id. at 1160.

8

compensation statutes contain an exclusion for wilful or intentional injury have adopted the chain of causation test as the criterion for interpreting the term 'wilful', 'purposeful' or 'intentional.'"  The court then articulated the chain of causation rule in detail:

> [A]n employee's death by suicide is compensable if the original work-related injuries result in the employee's becoming dominated by a disturbance of mind directly caused by his/her injury and its consequences, such as extreme pain and despair, of such severity to override normal or rational judgment.  The act of suicide is not an intervening cause of death and the chain of causation is not broken in cases where the incontrovertible evidence reflects that, but for the injury, there would have been no suicide.  A suicide committed under these circumstances cannot be held to be intentional even though the act itself may be volitional.  The chain of causation rule places the burden on the claimant to prove by a preponderance of the evidence that there was an unbroken chain of causation between the compensable injury, the disturbance of mind, and the ultimate suicide.  The direct causal connection between the work-related injury and the suicide must not be overpowered and nullified by influences originating solely outside the employment.

Id. at 1161.  Accordingly, the court affirmed the award to decedent's widow.[4]  See also Jenkins v. Recchi America, 658 So.2d

_____

[4]The jurisdictions that have adopted the chain of causation rule have excluded the requisite behavior from the definition of "willful" or "intentional" in order to allow recovery. Additionally, in State v. Ramsey, 839 P.2d 936 (Wyo. 1992), the Supreme Court of Wyoming analyzed the issue of whether a suicide could become a compensable event for workers' compensation coverage.  The court employed the chain of causation test "as the predominating principle on this subject within the volume of appellate cases" and decided the suicide was compensable.  The court began its analysis by examining the statutory provision that

9

157 (Fla. 1995) (finding that suicide was not willful within the meaning of the statute; thus, it was compensable); Wells v. Harrell, 714 S.W.2d 498, 501 (Ky. Ct. App. 1986) ("[w]here a direct causal link can be established between a work-related injury and a disturbance of the mind which leads to suicide, compensation will not be barred"); Campbell v. Young Motor Co., 684 P.2d 1101, 1103 (Mont. 1984) (finding a causal connection; stating that "the injury and the post-injury trauma, mental as well as physical, may take a path anticipated by no one, but nonetheless [be] traceable to the injury itself"); Schell v. Buell ECD Co., 690 P.2d 1038, 1042 (N.M. Ct. App. 1983) ("once causation has been established, . . . the act of suicide cannot then said to be wilful or intentional within the meaning of the statute"); Hall v. State Workmen's Compensation

---

excluded from the definition of compensable injury "the employee's willful intention to injure or kill himself or another." Finding that "[t]he concept that ties the causal relationship, unbroken chain, cases together, is that the act causing death was an intervening act but not an intervening cause," the court adopted the majority rule as the "most logical and supported by the current weight of persuasive precedent." Id. at 940.

In a similar case, Globe Security Systems Co. v. Workmen's Compensation Appeal Board, 544 A.2d 953 (Pa. 1988), the court focused on the statutory language that "no compensation shall be paid when the . . . death is intentionally self inflicted . . . ." The Supreme Court of Pennsylvania determined that the word "'[i]ntentionally' is a restrictive word which limits the word which follows it . . . . It is patently clear, on statutory construction alone, that it was not the legislative intent to render all self-inflicted deaths noncompensable, but only those that were intentionally self-inflicted." Id. at 956. The court adopted the chain of causation test rather than the Sponatski test, finding it to be "consistent with the humanitarian purpose of the Pennsylvania Workmen's Compensation Act, as the law of [the] Commonwealth." Id. at 957.

10

<u>Commissioner</u>, 303 S.E.2d 726 (W.Va. 1983) (employee's suicide is compensable provided injury sustained arose in the course of and resulted from covered employment). <u>See also</u> <u>Jackson Mental Health Center v. Lambie</u>, 898 S.W.2d 479, 482-83 (Ark. Ct. App. 1995) (allowing compensation for suicide caused by stress rather than by physical injury).

Additionally, the commission has followed this rationale in deciding suicide cases. <u>See, e.g.</u>, <u>Confer v. Arban & Carosi, Inc.</u>, 63 O.I.C. 66 (1984) (a case in which the issues were whether decedent's suicide was statutorily barred and whether the suicide was caused by decedent's initial injury.)[5] In <u>Confer</u>, the commission adopted the majority rule:

> [T]he appropriate test to be adopted in Virginia is that designated as the chain-of-causation rule, wherein where the injury and its consequences directly result in the worker's loss of normal judgment and domination by a disturbance of the mind causing the suicide, his suicide is compensable, with a suicide committed by the worker suffering from this degree of disturbance not to be considered "willful" or an "intentional" injury even though the action is volitional since the suicide relates back to the original injury rather than existing independently of the injury.

<u>Id.</u> at 80. Additionally, the commission explained as follows:

> [W]e agree with the basic tenet behind those cases adhering to the chain of causation, that recent psychiatric advances point to the

---

[5]This case was decided under Code § 65.1-38, which read that "[n]o compensation shall be allowed for an injury or death: (1) Due to the employee's willful misconduct, including intentional self-inflicted injury . . . ."

11

> fact that the consequences of an accidental injury can be so devastating that they influence the employee's mind to the point that the employee understands the consequences of the act of destruction but the employee is unable to resist the impulse to take his own life. Under such circumstances we do not find that the act is independent of the accident nor that it is willful within the meaning of [the statute].

Id. at 80–81.

"'It is well settled that where the construction of a statute has been uniform for many years in administrative practice, and has been acquiesced in by the General Assembly, such construction is entitled to great weight . . . .'" Holly Farms v. Carter, 15 Va. App. 29, 42–43, 422 S.E.2d 165, 172 (1992) (quoting Dan River Mills, Inc. v. Unemployment Comm'n, 195 Va. 997, 1002, 81 S.E.2d 620, 623 (1954)). The commission consistently has affirmed its adoption of the chain of causation rule in suicide cases. See, e.g., Ball v. Food Distributors, VWC File No. 1447752 (April 16, 1996); Stone v. Formex, Inc., VWC File No. 1652559 (May 15, 1996); Wheeler v. Pomalco Corporation, VWC File No. 1529329 (October 7, 1992); Confer v. Arban & Carosi, Inc., 63 O.I.C. 66 (1984). Accordingly, we find both the commission's construction of the statute and the rationale of the majority rule compelling.

### III. FINDING OF CAUSATION

Lastly, employer argues that the commission relied on less than credible evidence in finding that decedent's suicide was a compensable consequence of his original industrial accident.

12

Specifically, employer contends that the commission improperly relied on Dr. Lewis' opinion and disregarded the opinion of Dr. Smoller. Additionally, employer asserts that the evidence failed to substantiate that decedent suffered a "loss of normal judgment and domination by a disturbance of the mind."

On appeal, we view the evidence in the light most favorable to the prevailing party below. R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). We will not disturb the factual determination of causation if credible evidence supports the finding, even if the record contains evidence to the contrary. Ingersoll-Rand Co. v. Musick, 7 Va. App. 684, 688, 376 S.E.2d 814, 817 (1989); Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991). Additionally, "[q]uestions raised by conflicting medical opinions will be decided by the commission," Penley v. Island Creek Coal Co., 8 Va. App. 310, 318, 381 S.E.2d 231, 236 (1989); and "when an attending physician is positive in his diagnosis . . . , great weight will be given by the courts to his opinion." Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 439, 339 S.E.2d 570, 572 (1986).

In the instant case, the record demonstrates that the commission reviewed substantial medical and other evidence to conclude that decedent's suicide was causally connected to his original compensable injury. The commission considered the testimony of decedent's widow, Mrs. Ball, and reviewed records

13

kept by decedent's treating orthopedic surgeon, Dr. Daugherty. Included in Dr. Daugherty's records is his final diagnosis of decedent's condition as a "thirty-three percent impairment of the upper extremity, or twenty percent of the whole person." Dr. Daugherty's records also reflect his opinion that "Mr. Ball has a post traumatic reactive depression leading to hospitalization . . . [which] is directly and causally related to the injury which he sustained and for which he has been under the care of Winchester Surgical Clinic physicians . . . ."

Additional medical records were made part of the record in this case. Dr. Lizer, decedent's treating physician at Winchester Medical Center, described decedent's depression as follows: "[T]his patient reported increasing depression over the past year. He had multiple stressors. Most significantly, he had had a shoulder injury resulting in a significant period of disability." Included in Dr. Lewis' medical records and correspondence is his opinion regarding decedent's depression. Dr. Lewis opined that "Mr. Ball's current condition is clearly and directly related to his left shoulder and subsequent surgery . . . . The psychological factors we are dealing with are directly related to the pain and the depression which frequently accompanies this [condition]." Following decedent's suicide, Dr. Lewis wrote:

> [I]n my opinion, Mr. Ball's suicide is
> directly related to the chronic pain he
> struggled with in both shoulders. . . .
> [T]his pain resulted in considerable
> depression and several periods of suicidal

14

ideation as the only way out of his pain and depression . . . .

[H]is death is clearly a direct result of the chronic pain and depression associated with his original work related injury.

At employer's request, a psychiatrist, Dr. Smoller, reviewed decedent's records, interviewed decedent's widow, and issued an opinion regarding the cause of decedent's suicide. The commission summarized Dr. Smoller's findings as follows:

Dr. Bruce M. Smoller, M.D., psychiatrist, . . . concluded that "shoulder injuries of this type do not ordinarily cause depression which would end in suicide." He surmised that a number of factors had a bearing on the suicide, including a possible biological component, loss of position in the family business, personality factors, and marital problems. Dr. Smoller stated these other factors were as important as or more important that the chronic pain.

In weighing the testimony of Dr. Lewis and Dr. Smoller, the commission specifically found:

Dr. Lewis has been the treating psychologist since 1990. His extensive reports over the course of his treatment document overwhelmingly the fact that the most significant stressor in the claimant's life was his "intractable pain" resulting in incapacity and depression. Dr. Lewis' unequivocal opinion linking the decedent's death to his chronic pain and resulting depression is supported repeatedly by Dr. Lewis' ongoing assessments. Dr. Smoller's opinion attributing the depression and suicide to other factors has minimal support in the record.

Viewing the evidence in the light most favorable to claimant, we find that credible evidence supports the

15

commission's determination that decedent's death was causally related to his earlier compensable injury and that Code § 65.2-306(A)(1) does not bar recovery under these circumstances.

Affirmed.