In the Matter of the Claim of Elizabeth Maricle, Respondent, against A. E. Glazier et al., Appellants. Workmen's Compensation Board, Respondent.

Third Department, February 26, 1954.

*John F. Gates* for appellants.

*Champlain & Sloan* for claimant-respondent.

*Nathaniel L. Goldstein, Attorney-General* (*Harry Pastor* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

IMRIE, J. On October 14, 1949, decedent received an accidental injury in the course of his employment, which resulted in an inguinal hernia. An operation was performed on October 28, 1949. Physically, the operation appears to have been successful. He went home from the hospital on November 4, 1949. On November 30, 1949, he committed suicide. The Workmen's Compensation Board has found that the injuries sustained in the accident, " together with their resultant consequences and effects and said operation, caused him to develop a depressive psychosis and while suffering from said psychosis, he committed suicide on November 30, 1949. The suicide and death of Roy J. Maricle was the natural and unavoidable result of the accidental injuries sustained by him on October 14, 1949, and the consequences and effects resulting therefrom ", and has awarded death benefits. Employer and its insurance carrier have appealed to this court from the decision and award.

The board's decision is attacked upon two grounds: first, the insufficiency of the findings in that there was no finding that deceased suffered from a brain derangement in the nature of a disease or that the death was not the result of his willful intention to take his own life; second, that there is no substantial evidence to support the findings that deceased suffered from a depressive psychosis and that the suicide and death were the natural and unavoidable results of the accidental injuries.

Testimony of the widow and statements of the employer and two coemployees, uncontradicted, picture the deceased, prior to his injury, as a cheerful and pleasant man and a pleasant and willing worker, never giving evidences of depression or despondency. There is clear proof of a distinct change in disposition from a time prior to entering the hospital until the day of his death. He is then pictured as abnormally depressed, fearful of being alone, nervous, unable to sleep, complaining constantly of a burning sensation and pains about his heart and body, apprehensive of the development of other physical troubles, that cancer had developed from the operation, that he would never be able to go back to work, and that he would become a burden on his wife. Noting these characteristics, his attending physician, Dr. Klein, attempted to encourage him and set a time for him to return to work. The doctor describes him on November 10th as seeming "very empty, his eyes looked sort of far away when he was speaking to you." Seeing decedent again on November 25th, the doctor was of the opinion he was developing a depressive psychosis, in which he might have committed suicide. On cross-examination he said, "I didn't think he needed certification on the 25th, but where one draws the line is hard to say. In retrospect when we come to the natural conclusion of psychosis, which is suicide, I must say now he probably was in a psychotic state on the 25th."

Dr. Klein was, obviously, a general practitioner. He disclaimed being a psychiatrist, though his course of study in medical school included nervous and mental diseases, ailments and disorders. He said that he diagnosed and prescribed for mental conditions, including those associated with physical ailments. He was the family physician and, though he did not perform the hernia operation, attended decedent through and after that period. In his testimony he expressed the opinion that the accident was definitely related to the suicide, that decedent was suffering from a psychosis, that he was not suffering from any physical brain disease, but that a psychosis is a mental disease. On cross-examination about his opinion as to

whether decedent was suffering from a brain derangement, Dr. Klein asked the examiner, "What do you mean by brain derangement?" and the following appears: "Q. By that I mean a mental condition which affected his sanity? A. Yes, I would say he was. Q. On the 25th of November? A. In retrospect I would say he was."

The carrier's medical witness was Dr. Steckel, a specialist in nervous and mental disorders, who had never seen decedent. In answer to a hypothetical question, he expressed the opinion that the suicide was an intentional act. He was asked no further questions, so we have no means of determining the witness' evaluation of the quality or validity of the mental processes which produced the intention.

It is clear that there was sufficient affirmative proof before the board to show that decedent suffered a mental derangement in the nature of a disease caused by the accident and leading to the suicide. In *Matter of Pushkarowitz* v. *Kramer* (275 App. Div. 875, affd. 300 N. Y. 637), this court affirmed a decision of the Workmen's Compensation Board that claimant's injuries caused him to suffer from a depressive psychosis and that the ensuing death by suicide was due solely to the accidental injuries. Likewise, in *Matter of Commissioner of Taxation & Finance (Kwiatowski)* v. *Hedstrom-Spaulding, Inc.* (272 App. Div. 857), where the report of an impartial specialist indicated that suicide was induced by psychosis and melancholia following the accident, this court said, "Causal relation between the accident and death became a question of fact", and affirmed the award.

The force of the determination in the *Pushkarowitz* case and the propriety of awards under such circumstances were recognized in *Matter of Aponte* v. *Santiago & Garcia* (279 App. Div. 269, 274), cited by appellants, where Mr. Justice BERGAN said, "Awards which have been sustained have all been based on a showing of mental illness leading to the suicide and caused by the accident." Nor does *Matter of Wessells* v. *Lockport Cotton Batting Co.* (275 App. Div. 873) present a contrary view. There reversing the award and remitting the case to the board, this court said, "There is no finding, nor any competent medical testimony to sustain the finding that decedent was suffering from a mental derangement in the nature of a disease. * * * Proof to sustain such a fact may be available."

Considering *Matter of Delinousha* v. *National Biscuit Co.* (248 N. Y. 93) in the light of its expressed application to compensation matters and of the intervening extension of psychi-

atric understanding, we find nothing contrary to the conclusions already reached by this court. True, Judge ANDREWS commented (p. 95), "It may be said safely that insanity is a symptom of some functional derangement of tissues of the brain." Turning from the consideration of decisions relating to insurance policies as not being strictly analogous to claims arising under the Workmen's Compensation Law, he said (p. 96), "But here we deal with a statute intended to redress the incidence of that economic loss inevitable in industry. It is to be construed liberally. Death benefits are allowed if the injury results naturally and unavoidably in disease and the disease causes death. This is so if the injury causes insanity from gangrenous poisoning or otherwise, and the insanity directly causes suicide — in other words, if the suicide is not the result of discouragement, of melancholy, of other sane conditions, but of brain derangement. If that is the cause an award may be made. Death is then the proximate and direct result of the accident within the meaning of the statute."

With reference to psychosis Dr. Klein testified, "If you would examine their brain postmortem probably would not find any pathological indications as you don't in most psychotic individuals."

In Maloy's Simplified Medical Dictionary for Lawyers (1942) psychosis is defined, "A disease or disorder of the mind — a functional disorder." Functional disease is defined, "A disease of which the symptoms are not the result of an organic lesion or change of structure." The definition of derangement is, "Mental disorder, insanity."

In this case there was probative evidence of a condition of psychosis, depressive in character, of a mental disease, and of a mental or brain derangement affecting decedent's sanity, all of which could exist independently of any physical brain tissue degeneration or pathological indications. The record sustains the board's findings of causal connection and death by suicide as the natural and unavoidable result of the injuries sustained by decedent.

The decision and award should be affirmed, with costs to the Workmen's Compensation Board.

FOSTER, P. J., COON and HALPERN, JJ., concur; BERGAN, J., dissents and votes to reverse.

Decision and award affirmed, with costs to the Workmen's Compensation Board.