Van Voorhis, J.
(dissenting). The question is whether there is a causal connection between claimant’s husband’s suicide and physical injuries sustained by him in work-connected accidents which occurred 5 and 14 years before his death. There is no contention that his death was due to physical causes connected' with either accident. These accidents have been found to have depressed his spirit so as to cause him to take his own life many years later. The presumption supplied by section 21 of the Workmen’s Compensation Law does not relieve a claimant entirely from the burden of proving causation (Matter of Miller v. National Cabinet Co., 8 N Y 2d 277). Subdivision 3 of section 21 provides that an intent to commit suicide shall not be presumed in the absence of substantial evidence to the contrary. Section 10 provides that ‘ ‘ there shall be no liability for coin *891 pensation under this chapter when the injury has been solely occasioned * * * by wilful intention of the injured employee to bring about the injury or death of himself or another.” This decedent left a suicide note before taking an overdose of barbiturates from which he died. The Workmen’s Compensation Board has found as a fact that he committed suicide. It has been held, to be sure, that where a work-connected accident results in a fractured skull and convulsive epileptic seizures, the symptoms of which continue until death by his own hand, a causal relationship may be inferred (Matter of McIntosh v. Hauserman Co., 12 A D 2d 406, affd. without opn. 10 N Y 2d 892) following Matter of Delinousha v. National Biscuit Co. (248 N. Y. 93, 96) in which it was said: ' “ Death benefits are allowed if the injury results naturally and unavoidably in disease and the disease causes death. This is so if the injury causes insanity from gangrenous poisoning or otherwise, and the insanity directly causes suicide- — -in other words, if the suicide is not the result of discouragement, or melancholy, of other sane conditions, but of brain derangement. ’ ’
In Matter of Maricle v. Glazier (283 App. Div. 402, 406, affd. 307 N. Y. 738) there was evidence of psychosis, 11 of a mental disease, and of a mental or brain derangement affecting decedent’s sanity” which was rendered acute by an operation one month before the suicide. In Matter of Wessells v. Lockport Cotton Batting Co. (275 App. Div. 873) an award was reversed with a statement by the court that “ There is no finding, nor any competent medical testimony to sustain the finding that decedent was suffering from a mental derangement in the nature of a disease.” In Matter of Pushkarowitz v. A. & M. Kramer (275 App. Div. 875) the decedent sustained brain damage from being struck on the head by a garbage pail which had dropped a distance of five floors. In Matter of Commissioner of Taxation & Finance (Kwiatowski) v. Hedstrom-Spaulding (272 App. Div. 857) the decedent sustained a definite psychosis. In Matter of Aponte v. Santiago & Garcia (279 App. Div. 269, 274), where a workman sustained injuries from falling down stairs in his employer’s restaurant and was found 15 days later unconscious in liis bed, the court said (Bbugau, J.) that there was no substantial evidence upon which a suicide could be attributed to the industrial accident to which it had been charged, observing that “It is the New York rule that to attribute a suicide to an industrial accident the suicide must be shown to result *892 from a ‘ brain derangement ’ in the nature of a disease, which in turn has been the result of the accident. (Matter of Delinousha v. National Biscuit Co., 248 N. Y. 93.) It is not enough that discouragement over the accident or melancholy or ‘ other sane conditions ’ lead to the suicide (p. 96).”
In Matter of Kelly v. Sugarman (5 A D 2d 1023, mot. for iv. to opp. den. 5 N Y 2d 705) the decedent sustained a “ psychosis, or brain derangement, produced by the accident ’ ’.
No psychosis or brain damage existed in the case at bar. The deceased committed suicide on July 27, 1959. The industrial accidents to which this was attributed were a back injury in 1954, to which was charged 75% of the death award, and a cerebral concussion that occurred in 1945 when he fell while an usher at a movie theatre endeavoring to quell a disturbance in the men’s room. He did, to be sure, strike his head against a marble wall, but 11 days later was reported by the examining physician to have recovered fully from his head injury and not to be in need of treatment. For 4 years thereafter, there was no medical documentation or proof of any complaints of disability or need for treatment. He then did file a claim for compensation, although he had been in active employment meanwhile. He testified that following the 1945 fall in the washroom, he had headaches and fainting spells but his prior history disclosed he had experienced pre-existing headaches, blackouts and other mental symptoms before the accident of 1945.
There was no psychosis or diagnosis of brain damage. The medical testimony connecting his suicide with these accidents is speculative in nature and does not constitute substantial evidence since “ Expert opinion evidence lacks probative force where the conclusions are ‘ contingent, speculative, or merely possible ’.” (Matter of Riehl v. Town of Amherst, 308 N. Y. 212, 216.)
This unfortunate man led a checkered career from the time of his birth which resulted from a sexual assault upon his crippled mother. These two accidents were not the only other misfortunes which befell him. He had been raised as a foster child, had rickets in childhood and in 1940 had surgery in his right ear for the removal of a polyp. In April, 1944, he was hospitalized for renal colic and was discharged on May 12 of that year. Immediately thereafter, and before the first industrial accident, he was seen at Queens General Mental Hygiene Clinic where he complained of back pain and of always being nervous. *893 He related a history of falling off a stoop three years previously, following which he ‘ ‘ got panicky ’ ’ and ‘ ever since then everything goes black for a few minutes He stated that he could not see for a few minutes twice a day and that he had headaches. He had weird dreams and nightmares.
The causes of suicide are complex and varied. The rule is well established, as appears from the cases cited, that discouragement, melancholy and other sane conditions are not enough to void the mandate of section 10 of the Workmen’s Compensation Law that there shall be no liability for compensation when self destruction has been occasioned solely by the willful intention of the injured employee to bring about the injury or death of himself or another. Here there is no proof of insanity or severe mental impairment due to brain damage. Even if depression or melancholy were enough, in law, to sustain a claim, it would be mere guesswork to conclude that this man’s dispiritedness was caused by these two accidents which occurred 5 and 14 years before his death rather than by his other accidents or by the ill-fatedness of his whole life experience.
In my view, the order appealed from should be reversed and the claim dismissed.
Order affirmed, etc.