In the Matter of the Claim of GUSSIE REINSTEIN, Respondent, *v.* ROBERT MENDOLA et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, July 19, 1972.

*Herbert Lasky* (*Louis Busell* of counsel), for appellants.

*Jacob Newman* for claimant-respondent.

*Louis J. Lefkowitz, Attorney-General* (*Henriette Frieder* and *Daniel Polansky* of counsel), for Workmen's Compensation Board, respondent.

KANE, J. This is an appeal from a decision awarding benefits following a death by suicide. The decedent, George Reinstein, was a barber with a history of heart trouble dating back to 1951. On April 30, 1965 he sustained a work connected incarcerated inguinal hernia that required immediate surgery. Following the surgery he developed severe chest pains and related symptoms of coronary insufficiency requiring several weeks hospitalization. An award was made for disability that causally related the heart condition to the hernia operation. He attempted to return to work in March of 1966 on a part-time basis, but suffered another work related injury. During this entire period he was under close medical care for his coronary insufficiency, a condition that caused him to become extremely nervous, anxious and depressed. On May 17, 1966 he died of barbiturate poisoning from an overdose of sleeping pills and a finding of death by suicide has been made. After numerous hearings and a multitude of medical witnesses, an award of death benefits resulted, the supplemental decision of August 5, 1971 by a majority of the board modifying the prior decision by making a finding that decedent's continued symptoms " caused a psychosis ".*

It is clear from the evidence that decedent suffered a personality change subsequent to his hernia operation and the

_____

* The decision of August 4, 1970 had found " an anxiety neurosis and depression ".

ensuing cardiac difficulties. His increased nervousness and anxiety resulted in his referral to a psychiatrist on February 28, 1966 who made a diagnosis of an anxiety neurosis, severe and of long standing, and recommended treatment at least twice a week. Decedent never saw him again. Other medical witnesses testified that the anxiety neurosis gradually bordered on depression which caused the suicide. This condition was further described as an anxiety depressive reaction. There was medical evidence adopting the contrary view and finding no causal relationship between the herniotomy and the suicide, but viewing the record as a whole, there is more than substantial evidence to support a finding that decedent's death was causally related to the accident of April 30, 1965. If the suicide and the necessary causation are established, an additional requirement set forth in *Matter of Delinousha* v. *National Biscuit Co.* (248 N. Y. 93) compels a finding of "brain derangement" rather than "discouragement", "melancholy" or "other sane conditions". The substance of this rule has been followed by this court on other occasions, equating "brain derangement" with "psychosis" (*Matter of Franzoni* v. *Loew's Theatre & Realty Corp.*, 25 A D 2d 453, affd. 20 N Y 2d 889; *Matter of Aponte* v. *Santiago & Garcia*, 279 App. Div. 269; *Matter of Maricle* v. *Glazier*, 283 App. Div. 402, affd. 307 N. Y. 738). While *Delinousha* decided in 1928 is still the law, there have been advances in the field of psychiatry and an expansion of diagnoses sufficient to bring the deep depressive anxiety reactions evidenced by the facts in this case into the area of brain derangement and thus support the necessary conclusion that the suicide was not a willful act. If all the elements present are sufficient to establish a pattern of mental deterioration causally related to an industrial accident which culminates in a suicide, the requirement of a specific hard and fast diagnosis of the decedent's mental state is unnecessarily restrictive. So it is with the case at hand. Although there is no substantial evidence to sustain a finding of psychosis, it is clear from this record that there is a causal connection of death by suicide and the accident sustained by this decedent, strikingly similar to the situation presented in *Matter of Maricle* v. *Glazier* (*supra*).

The decision should be reversed, and matter remitted to the Workmen's Compensation Board for further proceedings not inconsistent herewith.

HERLIHY, P. J. (concurring). As noted by the majority in this case, it is no longer necessary to precisely find a mental illness to which a classic name might be given in order to estab-

lish that there was a mental illness of such a nature as to permit a finding that the suicide was not a conscious willful act of the former employee.

Medical science has made great progress in the study and diagnosis of mental illness since 1928 and the law and the courts have been guided by such progress.

Subdivision 15 of section 2 of the Mental Hygiene Law provides: "Whenever * * * the words 'insane,' 'insanity,' 'lunacy,' 'mentally sick,' 'mental disease' or 'mental disorder,' or any of them, are used, they shall have equal significance to the words 'mentally ill.'" (See *Matter of Franzoni* v. *Loew's Theatre & Realty Corp.*, 25 A D 2d 453, affd. 20 N Y 2d 889.)

The findings of the board in this case are adequate to indicate that it found a mental illness or irrationality causally related to the prior accident and of such a nature as to permit the inference that the decedent's will to refrain from the commission of the deliberate act was overcome or impaired.

REYNOLDS, J. (dissenting). The majority concedes that the instant record does not contain substantial evidence to support the board's finding in its decision of August 5, 1971 that the decedent suffered from a "psychosis". However, the majority by its reversal, in effect, is directing the board to find an award for death benefits on the ground that the suicide was causally related to an "anxiety neurosis and depression resulting from the accident" without regard to brain derangement or psychosis. I cannot agree with this position. In *Matter of Delinousha* v. *National Biscuit Co.* (248 N. Y. 93, 96) the Court of Appeals stated: "Death benefits are allowed if the injury results naturally and unavoidably in disease and the disease causes death. This is so if the injury causes insanity from gangrenous poisoning or otherwise, and the insanity causes suicide — in other words, if the suicide is not the result of discouragement, or melancholy, of other sane conditions, but of brain derangement. If that is the cause an award may be made. Death is then the proximate and direct result of the accident within the meaning of the statute." While as the majority notes we have equated "psychosis" with "brain derangement", in no case have we, in fact, departed from the *Delinousha* test as proposed here. Despite some loose, irrelevant language in *Matter of McIntosh* v. *Hauserman Co.* (12 A D 2d 406, affd. 10 N Y 2d 892) the question was simply whether the medical evidence supported the presence of a brain derangement or psychosis. And in *Matter of Maricle* v. *Glazier* (283 App. Div. 402, affd. 307 N. Y. 738) solely the same issue was present.

Neither of these cases or any other case cited by the majority here or the dissenters in *Matter of Avery* v. *Middletown* (40 A D 2d 568 [decided herewith]) would indicate a departure from the requirement of a finding of a mental derangement or psychosis to permit an award for a suicide. Moreover, I find no basis in law or common sense to change this well-established rule. Such a loose construction of the statutes and the cases as advanced by the court in this case could lead to the finding of a compensable suicide in every case.

Accordingly, I vote to reverse and dismiss the claim.

GREENBLOTT and SIMONS, JJ., concur with KANE, J.; HERLIHY, P. J., concurs in a separate opinion in which GREENBLOTT and SIMONS, JJ., concur; REYNOLDS, J., dissents and votes to dismiss the claim in an opinion.

Decision reversed, and matter remitted to the Workmen's Compensation Board for further proceedings not inconsistent herewith, without costs.