Eileen SAUNDERS et al., Petitioners,

v.

TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Respondent.

No. B-5025.

Supreme Court of Texas.

July 9, 1975.

Rehearing Denied Sept. 24, 1975.

Combs & Archer, Marvin B. Peterson, Jr., Houston, for petitioners.

Butler, Binion, Rice, Cook & Knapp, Tom M. Davis, Jr., and Donald B. McFall, Houston, for respondent.

DENTON, Justice.

This is a workmen's compensation case where the question presented is whether an injured employee's death which resulted from suicide is compensable under the terms of Article 8306, Section 1, Vernon's Civil Statutes Annotated, which precludes recovery if "the injury was caused by the willful intention" of the employee. The trial court, based upon a jury verdict, awarded benefits to Saunders' widow and minor child; however, the court of civil appeals reversed and rendered, holding that for death by suicide to be compensable it is necessary that the deceased have taken his life through an uncontrollable impulse or in a delirium of frenzy without conscious volition. Tex.Civ.App., 516 S.W.2d 242. We reverse the judgments of the courts below and remand the case for a new trial.

James E. Saunders sustained a serious injury to his back while on the job in February of 1972 which required that he be admitted to a hospital where corrective surgery was performed. After the initial surgery and dismissal from the hospital, Mr. Saunders was readmitted in April of 1972 for treatment of a leg condition that was attributed to the prior accident sustained in February. Texas Employers' Insurance Association authorized and paid for Saunders' medical treatment as well as paying compensation benefits throughout this period.

From April through June of 1972 Mr. Saunders appeared to be making a normal recovery and was anxious to return to work; however, in July his condition worsened and he began to suffer intense pain in his back. To combat this reversal, Saunders administered to himself more and more medication which had been prescribed to ease his pain, and sought, with the permission of his treating physician and the insurance carrier, the opinion of another specialist. He was readmitted to the hospital for more tests and upon his discharge was told that he possibly might need additional surgery in order to alleviate the severe pain he was experiencing. Mrs. Saunders and several neighbors testified that because of the increased pain, Mr. Saunders took more and more medication; and that he underwent a radical personality change exemplified by irritableness, rejection of his family and friends and becoming quite withdrawn. On Sunday, September 24, 1972, Mr. Saunders was observed taking his medicine and complaining of the pain in his back prior to his wife and daughter's departure for church. Upon their return, he was found dead as a result of a self-inflicted shotgun wound.

Mr. Saunders' widow and minor child brought suit under the Workmen's Compensation Act and were awarded benefits thereunder by the trial court based upon a jury verdict. The jury's answers to special issues, which were submitted in accordance with the rule laid down in *Jones v. Traders & General Insurance Co.*, 140 Tex. 599, 169 S.W.2d 160 (1943) were as follows: that the back injury, combined with Saunders' subsequent medical treatment, caused him to become so deranged that he was compelled to take his own life through an uncontrollable impulse; that the injury so suffered, combined with the resulting derangement, was the producing cause of the death; and that Saunders' taking of his own life was not caused by his willful or voluntary intent to injure himself.

The court of civil appeals, in reversing the trial court's judgment, concluded that there was no evidence to support the jury's answers to the above special issues in view of the test set out in *Jones v. Traders & General Insurance Co., supra.* In *Jones*, it was announced that in order for a suicide to be compensable under the Workmen's Compensation Act there must follow as a direct result of the work-injury,

> an insanity of such violence as to cause the victim to take his own life through an uncontrollable impulse or in a delirium of frenzy without conscious volition to produce death . . . however, where the suicide is the result of voluntary and willful choice determined by a moderately intelligent mental power with knowledge of the purpose and effect of the act, even though dominated by a disordered mind, a new and independent agency breaks the chain of causation.

In *Jones*, the workman was suffering from intense pain as a result of an injury to his foot and subsequently drank a mixture of concentrated lye, cleaning fluid and insect poison which caused his death three days later. The court thereupon concluded that no evidence had been adduced tending to prove a derangement or an insanity of such violence as to have caused the deceased to have taken his life through an uncontrollable impulse without conscious volition. Rather, the court was of the opinion that the evidence proved that the deceased had deliberately and voluntarily drunk the poison for the very purpose of taking his life and thus to put an end to his suffering. This same conclusion could be drawn under the evidence presented at the trial of the instant case, for there was testimony that Saunders was experiencing severe pain and probably knew what would happen when he pulled the trigger. The expert testimony, however, indicates that while the deceased was aware of the physical nature of his actions, the evidence also supports the determination that the deceased's impulse to commit suicide was one which arose at a time when he was unable to realistically evaluate such a course of action due to the cumulative effect of the drugs he was then taking.

The rule applied in *Jones v. Traders & General Insurance Co., supra,* was formulated by the Massachusetts Supreme Court in 1915 in the case of *In re Sponatski,* 220 Mass. 526, 108 N.E. 466 (1915), and thereafter adopted by a number of other jurisdictions. *See* Annot., 15 A.L.R.3d 616 (1967). The rule is directed at examining the deceased's capacity for conscious volition and is based on the assumption that where this element exists in a person who commits suicide, then the death does not arise directly from the prior injury, but rather from an independent intervening cause. The death is thereby considered a willfully self-inflicted act and therefore not covered by workmen's compensation statutes. The *Sponatski* doctrine, however, as articulated by the courts, is not a unitary concept, but contains two components: (1) uncontrollable impulse, which has to do with one's will power, and (2) lack of knowledge of physical consequences, which has to do with an individual's understanding or recognition of what he is doing. *See* A. Larson, Workmen's Compensation § 36.30, at 6–43 (Desk edition 1974). It is the strict application of this second factor, as was done in *Jones,* which has caused the greatest criticism of the *Sponatski* doctrine, for it fails to recognize the effect of pain, despair and prescribed psychotropic drugs. A number of jurisdictions, upon recognizing the advances made by medical science and psychiatry relating to the study of human reasoning and behavior have concluded that a suicide cannot be considered to have been intentionally self-inflicted if, in spite of the fact that the act is a conscious one, the suicide can be shown to have resulted from the deceased's inability to control the impulse to kill himself. *See, e. g., Burnight v. Industrial Accident Commission,* 181 Cal. App.2d 816, 5 Cal.Rptr. 786 (1960); *White-head v. Keene Roofing Co.,* 43 So.2d 464 (Fla.1949); *Anderson v. Armour & Co.,* 257 Minn. 281, 101 N.W.2d 435 (1969); *Prentiss Truck & Tractor Co. v. Spencer,* 228 Miss. 66, 87 So.2d 272 (1956); *Reinstein v. Mendola,* 39 A.D.2d 369, 334 N.Y.S.2d 488 (Sup.Ct.

1972), *aff'd,* 33 N.Y.2d 589, 347 N.Y.S.2d 455, 301 N.E.2d 438 (1973); *Petty v. Associated Transport, Inc.,* 276 N.C. 417, 173 S.E.2d 321 (1970). It would appear to us that this modification of the *Sponatski* doctrine is a sound one, for if the effects of an injury or its treatment so acts upon the will of the injured workman so that it is not operating independently at the time of the suicide, then the chain of causation would appear to be unbroken and the fact that the decedent knew of the physical consequences of his act would be irrelevant.

The *Jones* decision, as in the other jurisdictions following the *Sponatski* doctrine, also emphasized the necessity for the presence of an uncontrollable impulse, evidenced by a delirium or frenzy, in order for a suicide to be compensable. *See, e. g., Barber v. Industrial Commission,* 241 Wis. 462, 6 N.W.2d 199 (1942). As a result, compensation claims have been generally allowed when death was occasioned by some violent or eccentric method of self-destruction, but denied when the suicidal act was accomplished through some milder form such as the taking of an overdose of sleeping pills. *See* A. Larson, Workmen's Compensation § 36.20, at 6–42 (Desk edition 1974). It would seem, however, that the test should not be concerned with whether the compulsion could be characterized as being abrupt, unpremeditated or violent, but whether an uncontrollable impulse resulted from an impairment of the workman's reasoning facilities which would cause the suicidal act to be an involuntary one.

■ The essential question then becomes what criteria are to be followed in reaching the ultimate conclusion as to whether or not the record establishes sufficient mental derangement, causally related to the original injury. Although there is some controversy among the jurisdictions as to the kind or degree of mental disorder which will prohibit suicide from being viewed as an independent intervening cause, *see* Larson § 36.10, at 6–40, we believe that in cases where the effects of injuries suffered by

the deceased result in his becoming dominated by a derangement of the mind which impairs the ability to resist the impulse to take his own life to the extent that the decedent was in fact unable to control it, the suicide cannot be termed as willful under article 8306, section 1. A brain derangement would not necessarily be restricted to some organic mental disease or defect, for advances in the field of psychiatry bring such afflictions as deep depressive anxiety reactions into the area of brain derangement and medical science has made great strides in determining the effects that drugs have on human behavior. *See Reinstein v. Mendola,* 39 A.D.2d 369, 334 N.Y.S.2d 488 (Sup.Ct.1972), *aff'd,* 33 N.Y.2d 589, 301 N.E.2d 438, 347 N.Y.S.2d 455 (1973); *Avery v. City of Middletown,* 40 A.D.2d 568, 334 N.Y.S.2d 708 (Sup.Ct.1972), *rev'd,* 33 N.Y.2d 771, 350 N.Y.S. 412 (1973) (adopting lower court's dissenting opinion); Berger, *Drugs and Suicide in the United States,* 8 Clinical Pharmacology and Therapeutics 219 (1967).

In examining the testimony given at the trial of the instant case, it becomes evident that Saunders' mental condition was substantially altered by the drugs he was prescribed in an effort to relieve his pain. This was apparent from testimony concerning his personality changes as mentioned before as well as the following expert testimony by Doctor Doak concerning the cumulative effect of the drugs that Saunders was taking:

Q. All right sir. You indicated earlier that a person's judgment could be impaired [by these drugs]. Could a man's judgment be impaired so much that he could not distinguish a right from a wrong?

A. Yes, in the sense that a person's sense of values would be quite, quite distorted, and he might well feel impelled to do something that otherwise he would not be impelled to do.

. . . [It] won't give him hallucinations necessarily, like some medicines will, but it distorts, can distort the sense of values and give a person a different perspective in terms of values and value judgments. . . .

The doctor was also provided with a hypothetical fact situation which tracked Saunders' last months to which he responded:

I would say that it's very probable that this act of suicide was brought on by a state of profound emotional depression which had its basis in the actualities of the man's situation, of pain and disability—I suppose he would have a somewhat hopeless outlook had his two doctors disagreed as to what should be done, and his normal good sense, that should have kept him from doing such a thing, would be largely altered by the combinations of medicines that he was taking, because he was taking several different ones that individually can cloud judgment and working together are well recognized to augment these effects of one another.

. . . [T]he effect of these medicines very probably in a susceptible individual could induce a state of mind, and outlook, a distortion of values, an impairment of judgment that would interfere with the operation of his normal good sense, and make him very likely to do what he did.

There was also testimony of an express warning accompanying one of the medications prescribed for Saunders which warned that suicidal tendencies might be evidenced when the drug was taken in conjunction with other psychotropic drugs.

The above evidence is indicative of an individual whose suicidal act was the result of a mental derangement which impaired his ability to resist what then became an uncontrollable impulse to do away with himself. This condition, which arose out of the effects of a compensable injury, resulted in a suicide which was not occasioned by the willful intention of the deceased to kill himself as contemplated by the statute.

It is clear from the opinion of the court of civil appeals that the trial court's judgment was in error in that there was no evidence to support the jury's answers to special issues which were framed according to the law as it existed under *Jones v. Traders & General Insurance Co., supra.* In view of the error in the judgment of the trial court and the new test announced in this opinion which is to be applied to suicide cases arising under the Workmen's Compensation Act in the future, we reverse the judgments of the courts below and remand the cause to the district court for a new trial in the interest of justice. *See Scott v. Liebman,* 404 S.W.2d 288 (Tex.1966).