John Calhoun WELLS, Secretary, Labor Cabinet (Special Fund), Appellant,

v.

Fred HARRELL and Children, Kuhn's Big K Stores Corp., and Workers' Compensation Board, Appellees.

and

KUHN'S BIG K STORES CORP., Appellant,

v.

Fred HARRELL, as Widower of May Harrell; Brian Douglas Harrell and Amy Renee Harrell, as Dependent Children of Deceased; John Calhoun Wells, as Custodian of Special Fund, and Kentucky Workers' Compensation Board, Appellees.

Court of Appeals of Kentucky.

Aug. 15, 1986.

David R. Allen, Louisville, for appellant/appellee Wells.

Gerald L. Greene, Pineville, for appellee Harrell.

Joseph Lane, John Kelly, Jr., F. Preston Law Firm, London, for appellant/appellee Kuhn's.

Before HAYES, C.J., and DYCHE and HOWARD, JJ.

HAYES, Chief Judge:

These appeals are from a judgment of the Bell Circuit Court which reversed a decision of the Workers' Compensation Board (Board). The issue on appeal is whether the trial court erred in determining that the findings of fact by the Board were unsupported by substantial evidence and that based upon the overwhelming evidence, the Board should have found in the appellees' favor. We reverse.

Mary Harrell was originally injured in a work-related accident on November 23, 1978. The extent and duration of her injuries are in dispute, but Mrs. Harrell's physical and mental condition continued to deteriorate until her death as a result of a self-inflicted gunshot wound on March 6, 1980. After an evidentiary hearing before the Workers' Compensation Board, the Board dismissed a claim for benefits brought by Mrs. Harrell's husband and children as being barred by KRS 342.610 which states in pertinent part:

(3) Liability for compensation shall not apply where injury, occupational disease or death to the employee was proximately caused by his intoxication or by his

willful intention to injure himself or another.

The Board found (1) that Mrs. Harrell's injury by itself was not disabling; (2) that there was insufficient evidence to establish that Mrs. Harrell was suffering from a "mental derangement" leading to an "uncontrollable impulse" to commit suicide as a result of the injury; and (3) that other non-work-related factors contributed to the suicide such that the Board felt that the act was willful and intentional under KRS 342.-610.

The circuit court reversed. After summarizing the evidence considered by the Board, the court rejected the Board's legal conclusion that the death was not sufficiently causally related to the original injury. Further, the circuit court remanded the action to the Board for a redetermination of the issue of whether the suicide was "willful" and "intentional" so as to bar recovery under KRS 342.610 and also for a determination of the duration and extent of Mrs. Harrell's injuries. "Having made these findings," stated the court, "the Board should be able to reach the proper conclusions."

■ It is apparent from the opinion and order of the circuit court that the judge concluded from the evidence that Mary Harrell's suicide was compensable as being proximately caused by her injury received in November 1978 and that the Board, in essence, was directed to "re-think" its factual conclusions in order to arrive at the same legal conclusion as the circuit court. In directing the Board to make a particular finding, the circuit court exceeded its scope of review. It is well-settled that in order for the Workers' Compensation Board sitting in its judicial capacity to be reversed, the party who bore the burden of proof before the Board must establish that the evidence was so overwhelming as to compel a finding in his favor. *Howard D. Sturgill & Sons v. Fairchild*, Ky., 647 S.W.2d 796, 798 (1983); *Wolf Creek Collieries v. Crum*, Ky.App., 673 S.W.2d 735, 736 (1984). Where evidence is conflicting, the Board, as trier of fact, may accept or reject the evidence before it. *Old Republic Insurance Co. v. McCarty*, Ky., 599 S.W.2d 163, 164 (1980).

The evidence before the Board conclusively established that Mrs. Harrell's injury in November 1978 was work-related and that she committed suicide in March 1980. There was conflicting evidence as to Mrs. Harrell's mental condition, however, and as to whether there was a causal relationship between the 1978 injury and the 1980 suicide. The circuit court erred, therefore, in requiring the Board to reexamine the facts in order to arrive at the "proper" conclusion, and that portion of the circuit court's order directing that a particular factual conclusion be made is accordingly reversed.

■ A careful reading of the Board's opinion in this case, however, reveals that there is some confusion as to the proper factual test to be applied where a worker commits suicide following an injury which would not, of itself, have caused death. Since KRS 342.610 bars recovery where death is intentional or willful, recovery following suicide depends upon the mental state of the decedent, and whether that mental state was proximately caused by an underlying work-related injury.

There are presently three different standards which are used to determine whether the suicide of a worker will be held compensable. They are referred to variously as (1) the *Sponatski* rule, (2) the New York rule, and (3) the "chain of causation" rule. All three standards are based upon legal causation, the theory being that where the suicide is legally caused by or flows directly from a work-related injury, compensation will not be barred. The standards differ greatly in the kind and extent of mental condition which must be shown in order to establish that the suicide was not willful or intentional.

The oldest of the three is the *Sponatski* rule, which was set out in *Sponatski's Case*, 220 Mass. 526, 108 N.E. 466 (1915). The court in that case required a showing that, as a direct result of a work-related injury, the victim developed an insanity

which produced a "delirium of frenzy" or "uncontrollable impulse" such that death was not the result of any conscious wish on the part of the victim. Where suicide was the conscious choice of the decedent, even though that choice was the product of a diseased mind, compensation would be barred. *See Sponatski,* 108 N.E. at 468. Modern jurisdictions which still adhere to the *Sponatski* rule have modified it to allow for a more flexible interpretation of what constitutes an "uncontrollable impulse." *See e.g., Saunders v. Texas Employers' Insurance Association,* 526 S.W.2d 515 (Tex.1975) (suicide compensable where victim is dominated by a derangement of the mind that impairs the ability to resist the impulse to take one's own life).

New York, in the case of *Delinousha v. National Biscuit Company,* 248 N.Y. 93, 161 N.E. 431 (1928), adopted a rule which discarded the requirement of an uncontrollable impulse which would negate volition on the part of the decedent. The court in *Delinousha* held that volitional suicide would be compensable provided that a work-related injury resulted directly in a disease of the brain or other damage to the brain itself and that disease, in turn, resulted in brain derangement and consequent suicide. *Id.,* 161 N.E. at 432. The modern New York rule is less restrictive in that it requires only a showing of "mental deterioration" rather than evidence of mental disease or psychosis. *See Reinstein v. Mendola,* 39 A.D.2d 369, 334 N.Y.S.2d 488, 490 (1972).

■ The majority rule is the chain of causation rule. This theory focuses not upon any particularized state of mind or mental disease, but upon the causal link between a work-related injury and ultimate death by suicide. The rationale behind this liberalized form of the rule is grounded in advances in modern psychiatry and a recognition that volition may be negated by a deterioration in mental health short of insanity or derangement. Where a direct causal link can be established between a work-related injury and a disturbance of the mind which leads to suicide, compensa-tion will not be barred. As the court stated in *Whitehead v. Keene Roofing Co.,* 43 So.2d 464 (Fla.1949):

> [I]n those cases where the injuries suffered by the deceased result in his becoming devoid of normal judgment and dominated by a disturbance of mind directly caused by his injury and its consequences, his suicide cannot be considered "willful" within the meaning and intent of the [Workers' Compensation] Act.
>
> There is no force to the argument, propounded by some courts that the act of suicide is an independent intervening cause of the death of the workman, thus breaking the chain of causation from the injury to the death of the deceased. While it may be an independent intervening cause in some cases, it is certainly not so in those cases where the incontrovertible evidence shows that, without the injury, there would have been no suicide; that the suicide was merely an act intervening between the injury and the death, and part of an unbroken chain of events from the injury to the death, and not a cause intervening between the injury and death.

43 So.2d at 465.

This court is of the opinion that, of the three standards summarized above, the chain of causation rule is most consistent with the settled policy that the Workers' Compensation Act be liberally construed so as to effectuate the beneficent intent of the legislature in enacting it. *See Sergent v. J.P. Honeycutt Coal Co.,* Ky., 365 S.W.2d 734, 735 (1963); *Jones v. Crummies Creek Coal Co.,* Ky., 264 S.W.2d 294, 296 (1954). We therefore adopt the chain of causation rule and hold that an employee's suicide which arises in the course of and results from covered employment is compensable provided (1) the employee sustained an injury which itself arose in the course of and resulted from covered employment; (2) without that injury the employee would not have developed a mental disorder of such a degree as to impair the employee's normal and rational judgment; and (3) without that mental disorder the employee would not

have committed suicide. *See Hall v. State Workmen's Compensation Commissioner*, 303 S.E.2d 726, 730–731 (W.Va.1983).

Note that the primary injury need only be work-related. It is not necessary that the injury, of itself, be disabling. Furthermore, compensation will be denied where a mental condition resulting in suicide is proximately caused by non-work-related injuries or personal problems, or where mental aberration existed prior to the primary injury. A work-related injury may, however, aggravate a preexisting mental condition to disabling status. *See generally* 1A A. Lawson, *The Law of Workmen's Compensation*, § 36.40 (1985).

■ In the case before us, the Workers' Compensation Board apparently incorporated portions from all three standards. The Board found, for example, insufficient evidence of "mental derangement" or that Mrs. Harrell's death was the result of an "uncontrollable impulse." Furthermore, the Board found significant the fact that the injury which Mrs. Harrell suffered initially "in and of itself did not create any occupational or functional disability." The chain of causation rule, as adopted by this court, does not require a showing of either uncontrollable impulse or of mental derangement, nor does the rule require that the underlying injury be disabling.

■ Accordingly, this case is remanded to the circuit court with directions for the court to remand to the Workers' Compensation Board for further factual determinations consistent with the legal principles outlined in this opinion. Specifically, the Board should determine from the evidence: first, whether Mary Harrell suffered a work-related injury; second, whether, as a result of that injury, Mrs. Harrell developed a mental disorder which impaired her normal and rational judgment; and finally, whether such mental disorder was the proximate cause of Mrs. Harrell's suicide. Based upon those findings, the Board should proceed to determine whether recovery by the appellees is barred by KRS

342.610 and, if not, in what amount they should be compensated.

All concur.