Argued and submitted September 5, 1985, reversed and remanded with instructions
September 10, reconsideration denied November 21, petition for review denied
December 23, 1986 (302 Or 461)

In the Matter of the Compensation of
Betty McGill, a Beneficiary of
Clinton S. McGill (Deceased), Claimant.

McGILL,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE
FUND CORPORATION,
*Respondent.*

(82-01436; CA A34480)

724 P2d 905

J. Gary McClain, Milwaukie, argued the cause and filed the brief for petitioner.

Donna Parton Garaventa, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief

were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

Petitioner seeks review of a Workers' Compensation Board order which denied her benefits for her husband's death by suicide, because the decedent had "deliberately intended" his death. ORS 656.156(1). We reverse.

The facts are undisputed and are set out in the Board's order:

"The decedent was a respected physician in the Portland medical community. In the course of his specialty as a diagnostic internist he developed an expertise at testifying as an expert for defendants in personal injury cases. In May 1980 a malpractice action was filed against the decedent by someone upon whom the decedent had performed an independent medical examination. Shortly thereafter, in June 1980, the decedent experienced several short episodes of confused speech and numbness in his left side. The treating physicians diagnosed transient ischemic attacks, but were unable to find objective signs to support that diagnosis. In September 1980 the decedent began treating with Dr. Bloch, a psychiatrist. In October 1980 a second malpractice action was filed against the decedent.

"In April 1981 the decedent suffered a manic episode during which his wife brought him before the Board of Medical Examiners. The Board temporarily suspended his right to practice medicine pending treatment at the Oregon Health Sciences University. The decedent was treated for bipolar disorder at OHSU by Dr. Kinzie, a psychiatrist, from April 9, 1981 through April 26, 1981. Thereafter, Dr. Kinzie continued to treat the decedent when Dr. Bloch was unavailable.

"In August 1981 Dr. Bloch hospitalized the decedent with a diagnosis of depressive disorder. The decedent remained hospitalized continuously until his death. During the course of the hospitalization, Dr. Bloch became convinced that the major cause of the decedent's depressive disorder was the two malpractice actions. He opined that the episodes in June 1980 which had been diagnosed as transient ischemic attacks were actually manifestations of claimant's depressive disorder. In November 1981, following consultation with Dr. Kinzie, Dr. Bloch determined that the best course of treatment for the decedent included an effort to gradually return him to his normal life, including the practice of medicine. As part of that return, Dr. Bloch issued day passes from the hospital for the

weekend of November 7 and 8, 1981. On November 8, 1981 decedent committed suicide."

Both the referee and the Board found that the two malpractice actions were the major cause of decedent's depressive disorder and set aside SAIF's denial of petitioner's occupational disease claim.

There is no dispute but that decedent's suicide arose from his depressive disorder. The question remains whether ORS 656.156(1) precludes his widow from receiving benefits. The statute provides:

"If injury or death results to a worker from the deliberate intention of the worker to produce such injury or death, neither the worker nor the widow, widower, child or dependent of the worker shall receive any payment whatsoever under ORS 656.001 to 656.794."

*Jones v. Cascade Wood Products,* 21 Or App 86, 533 P2d 1399, *rev den* (1975), is the only Oregon case to discuss the application of ORS 656.156(1) to a suicide. In that case we concluded that the statute is not an absolute bar to recovery of benefits for death due to suicide. In determining the meaning of the statutory phrase "deliberate intention," we considered the various approaches used in state and federal compensation proceedings. 21 Or App at 87-88. We described the standards that had emerged to determine compensability and rejected the most liberal "but for" test, which holds a suicide compensable if "but for" the injury or disease the suicide would not have occurred. 21 Or App at 88. Because the facts of that case could not satisfy a more stringent standard, it was unnecessary to decide the issue that is before us now. That issue is whether, because decedent acted, at minimum, under an uncontrollable compulsion, the suicide is compensable.

Larson summarizes the current interpretation of the law:

"Suicide under the majority rule is compensable if the injury produces mental derangement and the mental derangement produces suicide. The minority rule, which is steadily losing ground, is that suicide is not compensable unless there has followed as the direct result of a work-connected injury an insanity of such severity as to cause the victim to take his own life through an uncontrollable impulse or in a delirium of frenzy without conscious volition to produce death." 1A

Larson, *The Law of Workmen's Compensation* 6-140, § 36.00 (1985).

The majority rule is also known as the chain-of-causation rule and exists in different forms because of modifications made in different jurisdictions. The Supreme Court of Texas in *Saunders v. Texas Employers' Ins. Ass'n,* 526 SW2d 515, 517 (Tex 1975), stated:

> "A number of jurisdictions, upon recognizing the advances made by medical science and psychiatry relating to the study of human reasoning and behavior have concluded that a suicide cannot be considered to have been intentionally self-inflicted if, in spite of the fact that the act is a conscious one, the suicide can be shown to have resulted from the deceased's inability to control the impulse to kill himself. * * * [I]f the effects of an injury or its treatment so acts upon the will of the injured workman so that it is not operating independently at the time of the suicide, then the chain of causation would appear to be unbroken and the fact that the decedent knew of the physical consequences of his act would be irrelevant."

The court rejected the "delirium or frenzy" requirement and summarized the applicable rule as follows:

> "Although there is some controversy among the jurisdictions as to the kind or degree of mental disorder which will prohibit suicide from being viewed as an independent intervening cause, *see* Larson § 36.10 at 6-40, we believe that in cases where the effects of injuries suffered by the deceased result in his becoming dominated by a derangement of the mind which impairs the ability to resist the impulse to take his own life to the extent that the decedent was in fact unable to control it, the suicide cannot be termed as willful under article 8306, section 1."

■    We agree with that reasoning; however, we decline to adopt its use of the word "impulse."[1] We hold that a worker's

---

[1] "Impulse" and "irresistible impulse" are terms rooted in the M'Naughten insanity rule of criminal law and are associated with a delirium or frenzy requirement. *Annot.,* 15 ALR3d 616, 622 (1967). That requirement is inappropriate to the determination of a decedent's ability to form a "deliberate intention" under ORS 656.156(1). We agree with the Texas court that

> "the test should not be concerned with whether the compulsion could be characterized as being abrupt, unpremeditated or violent, but whether an uncontrollable impulse resulted from an impairment of the workman's reasoning facilities which would cause the suicidal act to be an involuntary one." *Saunders v. Texas Employers' Ins. Ass'n, supra,* 526 SW2d at 517.

suicide resulting from work-related stress which produced a mental derangement that impaired his ability to resist the compulsion to take his own life cannot be said to have arisen from a "deliberate intention"[2] under ORS 656.156(1)

■       The facts in this case support an award of benefits. Decedent was suffering from a compensable occupational depressive disorder. It caused a mental derangement which rendered him incapable of forming a deliberate intent to commit suicide. No stronger nonemployment influences intervened to break the chain of causation. Therefore, his widow is to receive benefits under ORS 656.156(1).

Reversed and remanded with instructions to accept the claim for death benefits.

---

Therefore, we need not speculate as to when decedent decided to kill himself, because the uncontrollable compulsion to commit suicide need not be abrupt or unpremeditated.

[2] We find inapposite *Jenkins v. Carmen MFG., Co.,* 79 Or 448, 155 P 703 (1916), cited by respondent. Although the court discussed the phrase "deliberate intention," it did not discuss it in the context of mental derangement.