Argued and submitted September 15, 1986, reversed and remanded on the petition for judicial review with instructions; affirmed on cross-petition July 8, reconsideration denied September 25, petition for review denied October 27, 1987 (304 Or 280)

In the Matter of the Compensation of
Lawrence N. Sullivan, Claimant.

SULLIVAN,
*Petitioner - Cross-Respondent,*

*v.*

BANISTER PIPELINE AM et al,
*Respondents - Cross-Petitioners.*

(WCB 82-10103; CA A38048)

739 P2d 597

James L. Edmunson, Eugene, argued the cause for petitioner - cross-respondent. With him on the briefs were Christopher D. Moore and Malagon & Moore, Eugene.

Richard W. Davis, Portland, argued the cause and filed the brief for respondents - cross-petitioners.

Before Joseph, Chief Judge, and Newman and Deits, Judges.

NEWMAN, J.

Deits, J., concurring in part; dissenting in part.

## NEWMAN, J.

Claimant petitions for review of an order of the Workers' Compensation Board that denied his aggravation claim for hospitalization and treatment resulting from his attempted suicide. Respondents cross-petition from the portion of the order that granted claimant benefits for his right shoulder condition. On the petition, we reverse; on the cross-petition, we affirm.

Claimant suffered compensable knee and back injuries in September, 1980, when he slipped and fell backward in the bed of a truck. He filed a claim for the injury to his knee. He was awarded temporary total disability and compensation for 15% permanent partial disability of his left leg. In April, 1982, the Board ordered the claim reopened because, when he fell, claimant had also sustained a compensable lower back injury and his knee condition had worsened.

In September, 1982, claimant had shoulder surgery. Dr. Samsell, his orthopedist, had diagnosed his condition as "degenerative arthrosis of the right AC joint, traumatic in origin."[1] On October 29, 1982, the insurer issued a denial, which provided, in part:

> "Since the establishment of your claim, involving your low back and left knee, recent medical information received in this office designates treatment for conditions diagnosed as degenerative arthritis * * *. It is the opinion of Argonaut Insurance Company that [the shoulder condition] and your current need for treatment and time loss did not arise out of nor occur in the course and scope of your employment with Banister Pipeline."

The referee found that "the right shoulder problem is more probably than not related to the on-the-job fall" and set aside insurer's denial. The Board affirmed the referee's decision.

In January, 1983, Dr. Colbach, a psychiatrist, interviewed claimant. His diagnosis was:

> "Alcohol abuse, under control at this time, with recent exacerbation probably due to the industrial injury.

---

[1] The record is unclear as to how the claim for the shoulder condition came to the insurer.

"Psychogenic pain disorder, moderate, with some unconscious overfocusing on his body and some unconscious exaggeration of the extent of his pain problem, related to his industrial injury.

"Dysthymic disorder (depression), manifested by sleep problems, lack of motivation, overfocusing on himself, related to the industrial injury."

On October 6, 1983, claimant attempted suicide. The circumstances leading up to that are set out in the referee's order:

"Claimant's temporary disability was terminated by a Determination Order in August 1983. He is married and has children. In the past claimant and his wife were both employed and it appears they enjoyed the standards and comforts of middle-class America. Claimant has not worked since the injury and his wife stopped working in January 1983 because of her concern for claimant's welfare. From August 1983 on there was no regular family income.

"In October 1983 financial matters weighed heavily on claimant. The day before the suicide attempt claimant went hunting with his sons and although he did not engage in any physical activity, found the outing physically difficult for him. The evening after returning from hunting claimant and his wife quarreled and claimant consumed a quantity of wine. The record reflects that, at least at times, before the injury claimant had drunk to excess. Claimant testified that at the time he felt he was hurting his family worse by being alive and on the morning of October 6, 1983 confronted his wife and took the pills."

In November, 1983, claimant filed an aggravation claim for the hospital expenses and subsequent psychiatric treatment resulting from his suicide attempt.[2] The insurer denied the claim. The referee affirmed the denial. He found that "[t]he industrial injury and its aftermath materially contributed to claimant's mental condition and suicide attempt" but ruled "that its influence did not amount to producing an irresistible impulse and thus * * * the claim is not compensable." The Board affirmed the referee.

---

[2] The referee reserved the question whether claimant was entitled to psychiatric or psychological services related to his industrial injury but not related to the suicide attempt. That question is not presented on review.

■    In *Scheidmantel v. SAIF,* 70 Or App 552, 690 P2d 511 (1984), we held that an aggravation claim may be based on a claimant's psychological problems that result from a compensable physical injury, even though no physical worsening has occurred. In *Jeld-Wen, Inc. v. Page,* 73 Or App 136, 698 P2d 61 (1985), we stated:

> "A claimant asserting the compensability of a psychiatric condition following an industrial injury must prove by a preponderance of the evidence that the work-related injury was a material cause of the condition, or, if the claimant's mental condition predated the injury, that the injury worsened the preexisting condition." 73 Or App at 139. (Citation omitted.)

Although physical and family problems unrelated to the injury were also factors, Colbach, who diagnosed claimant's depression before his suicide attempt, and Johnson, who treated him for depression afterward, concluded that the compensable injury and its effects were material factors in causing his depression. Johnson also concluded that claimant's depression was a "material contributing factor" in causing his suicide attempt. Dr. Stolzberg, a psychiatrist who saw claimant at the insurer's request, suggested that factors unrelated to the injury caused his depression and suicide attempt. She emphasized his other health problems and financial worries. She also emphasized that, before his injury, claimant had a "drinking problem." The record indicates, however, that claimant had no significant problem with depression before the injury, that his financial problems resulted from his inability to work after the injury and that his injury and resulting disability substantially exacerbated any drinking problem that he may already have had. *See Grace v. SAIF,* 76 Or App 511, 709 P2d 1146 (1985).

We agree with the referee's conclusion that claimant's industrial injury was a material cause of his depression and suicide attempt. The depression was an "aggravation" of his compensable injury. The expenses from his resulting suicide attempt, therefore, are compensable, unless ORS 656.156(1) precludes compensability.

ORS 656.156(1) provides:

> "If injury or death results to a worker from the *deliberate intention* of the worker to produce such injury or death, neither the worker nor the widow, widower, child or dependent of

the worker shall receive any payment whatsoever under ORS 656.001 to 656.794." (Emphasis supplied.)

In *McGill v. SAIF,* 81 Or App 210, 724 P2d 905, *rev den* 302 Or 461 (1986), we said:

> "[A] worker's suicide resulting from work-related stress which produced a mental derangement that impaired his ability to resist the compulsion to take his own life cannot be said to have arisen from a 'deliberate intention' under ORS 656.156(1)." 81 Or App at 214. (Footnote omitted.)[3]

Accordingly, if claimant's depression was a "mental derangement" that impaired his ability to resist a compulsion to take his own life, his suicide attempt cannot be said to have arisen from a "deliberate intention."

A mental derangement "would not necessarily be restricted to some organic mental disease or defect, for advances in the field of psychiatry bring such afflictions as deep depressive anxiety reactions into the area of brain derangement." *Saunders v. Texas Employers' Ins. Ass'n.,* 526 SW2d 515, 518 (Tex 1975). The evidence establishes that claimant was suffering from a "mental derangement" that impaired his ability to resist a compulsion to take his own life.

---

[3] In *McGill,* we rejected the "irresistible impulse" test under which a

" 'suicide is not compensable unless there has followed as a direct result of a work-connected injury an insanity of such severity as to cause the victim to take his own life through an uncontrollable impulse or in a delirium of frenzy without conscious volition to produce death.' " 81 Or App at 213 (quoting 1A Larson, *The Law of Workmen's Compensation* 6-140 § 36.00 (1985).

In substance, *McGill* adopted the rule set forth in *Saunders v. Texas Employers' Ins. Ass'n,* 526 SW2d 515, 517 (Tex 1975):

> "A number of jurisdictions, upon recognizing the advances made by medical science and psychiatry relating to the study of human reasoning and behavior have concluded that a suicide cannot be considered to have been intentionally self-inflicted if, in spite of the fact that the act is a conscious one, the suicide can be shown to have resulted from the deceased's inability to control the impulse to kill himself. * * * [I]f the effects of an injury or its treatment so acts upon the will of the injured workman so that it is not operating independently at the time of the suicide, then the chain of causation would appear to be unbroken and the fact that the decedent knew of the physical consequences of his act would be irrelevant."

*McGill* declined, however, to adopt *Saunders'* use of the word "impulse," because " 'the test should not be concerned with whether the compulsion could be characterized as being abrupt, unpremeditated or violent.' " 81 Or App at 214 n 1 (quoting *Saunders, supra,* 526 SW 2d at 517).

Johnson concluded, consistently with Colbach's earlier diagnosis, that, before his suicide attempt, claimant was suffering from "major depression" or "dysthymic disorder," which he characterized as a "psychiatric problem." He also concluded that the disorder impaired claimant's ability to think rationally and that the suicide attempt was an "impulsive act," which he described as "an act which has very little prior thought given to it and is a result of relatively abrupt and strong urges * * * and thoughts highly influenced by emotional factors." Although the alcohol that claimant consumed[4] also may have contributed to his inability to resist the compulsion, his drinking, as discussed above, was related to his injury and its aftermath. We conclude that the suicide attempt did not arise from a "deliberate intention" within the meaning of ORS 656.156(1). Accordingly, claimant's expenses for hospitalization and treatment resulting from his suicide attempt are compensable.

■ In their cross-petition, respondents argue that there is insufficient evidence to establish that claimant hurt his shoulder when he fell. We disagree. Samsell, claimant's orthopedic surgeon, stated:

"There is some discrepancy as to the exact mechanism of (shoulder) injury, and I feel that if he fell directly onto his back, then the likelihood of this being a contributing factor to his AC joint arthritis is insignificant. If he fell and landed directly on his right shoulder or onto an outstretched hand which would generate a force across the AC joint, then I think the likelihood of it contributing to the symptoms in the AC joint is quite substantial and more than 51%."

Claimant could not remember exactly how he landed when he fell, but a co-worker who was an eyewitness testified that "his feet went up, he went back and hit on his back, shoulder and head." He also testified that the bed of the truck was strewn with tools and other objects which claimant's shoulder may have struck when he fell. The co-worker could not remember, however, whether claimant's shoulder actually struck one of those objects.

---

[4] Claimant had consumed a substantial amount of wine before he attempted suicide, and his blood alcohol level was .12 per cent when he was admitted to the emergency room several hours later.

The referee commented on the testimony of the co-worker:

> "He said claimant hit his head, back and shoulder. The witness also said equipment was strewn on the floor of the truck and it was quite likely claimant struck something when he fell. * * * The witness appeared to me to be an angry but honest person."

We give weight to the referee's determination of witness credibility. *Bloomfield v. National Union Ins. Co.,* 72 Or App 126, 694 P2d 1015 (1985). Samsell's opinion concerning the cause of the shoulder condition, combined with the testimony of the co-worker, established that claimant hurt his shoulder when he fell in the bed of the truck and, therefore, that the injury was compensable.

Reversed and remanded on the petition for judicial review with instructions to accept the claim; affirmed on the cross-petition.

**DEITS, J.,** concurring in part; dissenting in part.

I concur in the majority's conclusion that claimant's shoulder injury is compensable and that his depression was an "aggravation" of his compensable injury. However, because I believe that the majority misapplies ORS 656.156(1) as interpreted by this court in *McGill v. SAIF,* 81 Or App 210, 724 P2d 905, *rev den* 302 Or 461 (1986), I dissent from the holding regarding the suicide attempt.

My principal concern is that the majority has modified the causation principles articulated in *McGill.* It is my understanding, based on the language of the statute as well as this court's decision in *McGill* that, in order to avoid the limitation of compensation in ORS 656.156(1), the underlying compensable injury and the conditions resulting therefrom must be the *primary cause* of the mental derangement which impaired the ability to resist the compulsion to take one's own life. The majority decision relaxes the standard in *McGill* and requires only that the injury be a material factor in causing the mental derangement.

*McGill* involved the suicide of a physician, caused by a compensable occupational depressive disorder which resulted from two medical malpractice actions that had been filed

against him. Before the actions, he had been a respected physician in the Portland medical community. There was no evidence or contention that non-employment influences or pre-existing conditions caused his depression. We stated:

> "We hold that a worker's suicide resulting from work-related stress which *produced* a mental derangement that impaired his ability to resist the compulsion to take his own life cannot be said to have arisen from a 'deliberate intention.'" 81 Or App at 214. (Footnote omitted; emphasis supplied.)

"Produce" means "to cause to have existence or to happen." *Webster's Third New International Dictionary* (1976). In *McGill,* the work-related disorder was the sole and exclusive cause of the decedent's derangement. I believe *McGill* requires that the underlying injury be the primary cause of the derangement.

The facts of this case are in marked contrast to *McGill.* Here, claimant had a large number of physical and emotional problems that pre-dated the compensable injury. Approximately six months before the injury, he was involved in an automobile accident in which he lost an ear. He had a history of alcohol abuse; his wife stated that he had always been a heavy drinker. He had had several operations to correct circulatory problems. There were many problems within his family. In short, he was a troubled man before the industrial accident.

The psychiatric experts who examined him agreed that the compensable injuries contributed to the depression which led to his suicide attempt but that other factors—most notably pre-existing problems with family, health and alcohol—were also contributing factors. Dr. Colbach indicated: "Some of [claimant's distress] can be attributed to the industrial injury, but some of it seems to predate this and be due to other factors." Dr. Johnson believed that the depression and intoxication were the two major factors that led to his suicide attempt. Dr. Stolzberg did not directly relate the suicide attempt to the industrial injury. Those opinions indicate that the causal relationship between the injury and the suicide attempt required by *McGill* has not been met.

In this case, the work-related disorder was but one of several factors contributing to claimants' depression. The referee correctly concluded:

"Both [psychiatrists Johnson and Stolzberg] indicate that to some degree the injury and its aftermath including the physical condition and discomfort, the resulting unemployment and strained financial circumstances, and the termination of compensation played *some role* in claimant's mental state and suicide attempt. Other life circumstances including non-injury-related physical problems also weighed on claimant's mind." (Emphasis supplied.)

The facts indicate that the compensable injury was a factor contributing to, but was not the primary cause of, his mental condition, as *McGill* requires. Therefore, I would conclude that the medical expenses associated with the suicide attempt are noncompensable. Accordingly, I disagree with the majority's contrary holding.